Allain Delont NORMAN,
Plaintiff–Appellant,

v.

Otis TAYLOR, Deputy Sergeant,
Defendant–Appellee.

No. 92–6648.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1994.

Decided June 16, 1994.

---

Feiwus, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Mark D. Stiles, Willcox & Savage, P.C., Norfolk, VA, for appellee.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judges DONALD RUSSELL, WIDENER, WILKINSON, WILKINS, NIEMEYER, HAMILTON, and WILLIAMS joined. Judge K.K. HALL wrote a dissenting opinion, in which Chief Judge ERVIN and Judges PHILLIPS, MURNAGHAN, and MICHAEL joined.

## OPINION

LUTTIG, Circuit Judge:

Allain Delont Norman sued Norfolk Deputy Sergeant Otis Taylor under 42 U.S.C. § 1983, alleging that Sergeant Taylor subjected him to "cruel and unusual punishment" in violation of the Eighth Amendment by swinging a set of cell keys at him, striking him once on the thumb. The district court granted summary judgment for Sergeant Taylor, holding that minimal force had been employed by Taylor in a good-faith effort to restore discipline. A divided panel of this court reversed that decision, 9 F.3d 1078. We granted rehearing *en banc*, and now affirm the district court.

### I.

The incident giving rise to this suit occurred at the Norfolk City Jail on March 5, 1990, when Norman was waiting to be processed for admission. According to Norman's verified complaint, he was "getting ready to smoke a cigarette" when Sergeant Taylor ran up to him and began swinging his cell keys in the direction of his face. J.A. at 10. Norman stated that he put up his hand to shield his face, and Sergeant Taylor "caught [his] right hand, hitting [him] on

**ARGUED:** Steven H. Goldblatt, Director, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Conrad Moss Shumadine, Willcox & Savage, P.C., Norfolk, VA, for appellee. **ON BRIEF:** Leonard A.

[his] thumb with [the] cell keys causing [his] hand to swelled [*sic*]." *Id.* Norman claimed that he then asked another deputy if he could speak with the "Head of Classification," whereupon Sergeant Taylor again ran over and said to Norman that "not only [would he] hit [his] hand with his keys but he would put his cell keys threw [*sic*] [his] heart as well." *Id.* Norman also stated that he had "put in fifteen to sixteen Doctor request forms to seek help for [his] hand." *Id.* at 11.

Sergeant Taylor filed a motion to dismiss, which, because it was accompanied by supporting materials, was converted by the district court into a motion for summary judgment. In his affidavit, Taylor asserted that, in addition to lighting a cigarette in a no-smoking area, Norman became disruptive and "began yelling at and to the inmates being assembled outside the passageway." *Id.* at 34–35. Taylor stated that Norman's yelling disrupted prison security, because the deputies were conducting a roll call to create a list of those inmates who were to be transported to court that day. *Id.* at 35. Taylor denied hitting Norman, declaring that he merely ordered him to quiet down and extinguish his cigarette. Accompanying Taylor's motion was an affidavit by Chief Classification Officer Cody Benn, who stated that Norman's medical file did not contain any of the fifteen or sixteen medical request forms concerning injury to his thumb which Norman claimed he filed. *Id.* at 27. Taylor also submitted Norman's prison medical records, which consisted of three forms completed by jail personnel who had examined Norman at various times. None of these reports referenced any hand or thumb injury or recited that Norman had complained about his hand or thumb. *Id.* at 30–33.

After Sergeant Taylor filed his motion for summary judgment, the district court gave Norman, who at that point was proceeding *pro se*, a *Roseboro* notice.[1] The notice stated that because a motion for summary judgment had been filed, Norman was invited to "file affidavits, statements, exhibits or other legal or factual material that support[ed] his posi-

tion in the case." J.A. at 46. Significantly, the district court cautioned that in order to survive summary judgment,

> [t]he plaintiff must set out either in his own affidavit or the affidavits of other witnesses specific facts that show that the plaintiff and the defendant truly disagree about one or more important facts present in this case. *The plaintiff, in his affidavits and exhibits, should address himself, as clearly as possible, to the issues and facts stated in the complaint and in the affidavits of the defendants.*

*Id.* at 46–47 (emphasis added).

Norman then secured the assistance of a law student at the Postconviction Assistance Program at the Marshall–Wythe School of Law. *Id.* at 62. Responding to Sergeant Taylor's motion, Norman submitted his own affidavit, and the affidavits of two inmates, Karl Robertson and Eustis Hammonds. In his affidavit, Norman repeated his claim that Sergeant Taylor began swinging the keys at him after he began smoking, and noted that Sergeant Taylor had missed him twice before striking him on the thumb. *Id.* at 63–64. Norman's affidavit, however, did not deny or in any way attempt to refute Taylor's representation that Norman was creating a disturbance.

Robertson's affidavit did not address what had occurred before Norman was allegedly hit, although it did corroborate Norman's allegation that Sergeant Taylor had threatened to stab him with his keys at the same time as he pushed him against a wall. *Id.* at 68–69. Hammonds' affidavit stated that Sergeant Taylor swung his keys at Norman, but, like Robertson's, it said nothing as to what had occurred immediately before. *Id.* at 70. On the issue of his injury, Norman repeated his allegations that on occasions he still had pain in his right thumb. *Id.* at 65. He further claimed that his prison doctor had refused to treat his hand; a grievance form to this effect, which was filed after his transfer from Norfolk City Jail, was also submitted. In that form, Norman stated that his hand "give[s] [him] a lot of trouble" when it

---

1. In *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), this circuit held that *pro se* plaintiffs must be advised that their failure to file respon- sive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

rains or is cold, and sometimes when he writes too much. *Id.* at 65–66.

After Norman filed these papers, the district court granted summary judgment for Sergeant Taylor. It reasoned that because Norman had not denied that he had created a disturbance, and because he had "failed ... to produce any corroborating evidence" whatsoever regarding his assertions of injury, the undisputed facts proved that "minimal force was applied in a good-faith effort to restore discipline—to quiet [Norman] down and extinguish his cigarette." *Id.* at 78.

## II.

Norman argues on appeal that the district court improperly required him to deny that he was being disruptive, and contends that his injuries were sufficient to support an excessive force claim. Because, as the district court found, Norman's summary judgment materials are completely devoid of any facts from which one could reasonably infer that Norman was injured, if at all, in more than a *de minimis* way when Sergeant Taylor swung his keys at him, we conclude that any force used by Sergeant Taylor was *de minimis* and thus could not have violated the Eighth Amendment.

■ In recent years, the Supreme Court has extended the application of the Eighth Amendment's prohibition against "cruel and unusual punishments" to the treatment of prisoners by prison officials. The Court has stated that, in this context, the Amendment forbids " 'the unnecessary and wanton infliction of pain.' " *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)). The analysis for determining wheth-

er an unconstitutional infliction of pain has occurred includes both an objective and subjective component. Under the objective component, which is at issue here, a reviewing court is to ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991)).

■ Prior to the Supreme Court's decision in *Hudson,* some courts had held that in the excessive force context, the Eighth Amendment required a prisoner to prove that he had suffered "significant injury" at the hands of prison officials. In *Hudson,* the Court rejected a "significant injury" requirement. But in so holding, it explicitly stated that under the Amendment's objective component *"de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind,' " are beyond "constitutional recognition." *Id.* at ——, 112 S.Ct. at 1000 (quoting *Whitley,* 475 U.S. at 327, 97 S.Ct. at 1087). While the Court in this statement excepted from the Eighth Amendment only *de minimis* uses of force, it seemed to affirm by negative implication one sentence later that *de minimis* injury can serve as conclusive evidence that *de minimis* force was used:

> [T]he blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes. *The extent of Hudson's injuries thus provides no basis for dismissal of his § 1983 claim.*

*Id.* (emphasis added).[2] Thus, contrary to Norman's contention, *Hudson* does not sug-

2. We appreciate that there is some tension between our understanding of the Court's implication and the first sentence of this passage which, although listing the injuries sustained by Hudson, states that "the blows" (*i.e.,* the force) leveled against Hudson were not *de minimis.* We are satisfied, though, that the better reading of the passage is that the Court did intend to affirm that injuries can be so insignificant as to justify a conclusion that excessive force was not employed. Nothing but inadvertent misstatement, which we are unwilling to ascribe to the Court in

this particular passage, could explain the explicitness of the second sentence that the injuries sustained by Hudson could not serve as a ground for dismissal, and the linkage of "force" and "injury" for no other apparent reason in the immediately preceding sentence. This reading of the passage is reinforced by the fact that the Court was addressing in this paragraph the possibility, presented by its discussion in the preceding paragraph, that Hudson's injuries, which the Fifth Circuit characterized as "minor," were *de minimis* and therefore not cognizable. *See id.*

gest, much less hold, that the extent of injury is irrelevant to whether excessive force has been employed and therefore that an excessive force claim cannot be defeated by evidence that the plaintiff's injury was *de minimis*.[3] Each of the several circuits that have considered the relevance of *de minimis* injury in consideration of the objective component of the excessive force inquiry post-*Hudson* have read the Court's opinion in this way. For example, the Eighth Circuit, reaffirming its prior holdings that "actual injury is required to state an Eighth Amendment violation," noted that its requirement was "consistent with the Supreme Court's conclusion that more than *de minimis* force is necessary." *Cummings v. Malone*, 995 F.2d 817, 822–23 (8th Cir.1993). The Fifth Circuit, too, has consistently held that "[i]n cases post-*Hudson*, '[c]ertainly *some* injury is still required.'" *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir.1993) (quoting *Spann v. Rainey*, 987 F.2d 1110, 1115 n. 7 (5th Cir.1993)); *cf. Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) ("Because he suffered no injury, we find that the spraying of Jackson with the fire extinguisher was a

*de minimis* use of physical force and was not repugnant to the conscience of mankind."); *see also Moore v. Holbrook*, 2 F.3d 697, 704 (6th Cir.1993) (Batchelder, J., dissenting) ("*de minimis* injuries suggest *de minimis* use of force").

Finding ourselves in agreement with the Fifth and Eighth Circuits that an excessive force claim generally should not lie where any injury sustained by the plaintiff is *de minimis*, and that *Hudson* does not foreclose and indeed is consistent with such a view, we hold that, absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*.[4] Applying this standard, it is evident that the district court correctly awarded summary judgment to Sergeant Taylor. Viewing Norman's summary judgment materials in a light most favorable to him, we do not believe that any reasonable juror could conclude that he suffered anything more than *de minimis* injury, if any injury at all, or that any force used was "repugnant to the conscience of mankind."[5] At most, Norman received a sore

---

(citing *Hudson v. McMillian*, 929 F.2d 1014, 1015 (5th Cir.1990)).

**3.** At argument, Norman's counsel relied in support of his argument almost entirely on the statement in *Hudson* that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency *always* are violated," *id.* (emphasis added). Of course, had the Court intended this statement to be absolute in the sense suggested by Norman's counsel, then the Court could not have recognized the *de minimis* force exception that it did in the very next paragraph of its opinion.

Similarly, we disagree that the *Hudson* dissent's statement that "[t]he extent to which a prisoner is *injured* by the force—indeed, whether he is injured at all—is in the view of the court irrelevant," *id.* at ——, 112 S.Ct. at 1005 (Thomas, J., dissenting), confirms that the majority categorically rejected an injury threshold. *See* Appellant's Brief at 15. Even assuming this statement represents an accurate understanding of the majority's view of non-*de minimis* uses of force, we believe that this statement was not intended to have relevance to the majority's exception to its general rule for *de minimis* uses of force. If it was directed at this exception, it was clearly in error, given the implication of the majority's own observation that the seriousness of Hudson's injuries provided no basis for dismissal, *see* —— U.S. at ——, 112 S.Ct. at 1000.

**4.** We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. *Cf. Hudson*, —— U.S. at ——, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the *de minimis* force exception, *see Hudson*, —— U.S. at ——, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

**5.** We do not base this conclusion on a separate conclusion that the force used by Sergeant Taylor was in response to the disturbance that Taylor alleges Norman was creating by yelling during the prison roll call. We do conclude, however, as did the district court, that based upon Norman's failure to deny that he was creating a disturbance, Taylor's allegation to this effect must be accepted as true. On this understanding of the incident, there can be no question that the district court properly held that the force used was justified "in a good faith effort to maintain or restore discipline," *Whitley*, 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)), and thus that summary judgment was warranted.

thumb as a result of the incident, and, as the district court correctly found, J.A. at 77, there is no record evidence even to support his claim of this injury. Not only did Norman fail to proffer *any* evidence of injury to rebut the jail administrator's affidavit stating that a search of Norman's medical files revealed no evidence that he had been injured, *id.* at 27, or even that he had made the fifteen or sixteen requests for medical attention that he alleged, *id.*,[6] but there is affirmative evidence in the record that Norman was not injured. Norman was examined on the day of the alleged assault, and although it is not entirely clear that this examination occurred after the incident at 10:30 a.m., *see id.* at 63, 68,[7] the resulting medical evaluation reported no injury of any kind to Norman's thumb. *Id.* at 30. Two other reports from medical examinations that unequivocally occurred after the alleged incident likewise noted nothing about any pain or swelling in Norman's hand, or even about any complaints of such pain by Norman. *Id.* at 31–33.

In the face of this evidence, Norman relied only on the allegations in his complaint, affidavit, and grievance form that his hand was, on occasions, still swollen and painful. Norman also made the bare allegation, for which there is likewise no record support, that he suffered psychological harm as a consequence of the incident. Fed.R.Civ.P. 56(e), however, provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." (emphasis added).

Norman simply did not satisfy his burden under Rule 56(e).

The judgment of the district court is affirmed.

*AFFIRMED.*

K.K. HALL, Circuit Judge, dissenting:

The majority affirms the order granting summary judgment on two independent bases: (1) Norman's evidence is "completely devoid of any facts from which one could reasonably infer that Norman was injured, if at all, in more than a *de minimis* way when Sergeant Taylor swung his keys at him ..." (majority op. at 1262), and (2) the force used was justified as "a good faith effort to maintain or restore discipline." Maj. op. at 1263 n. 5. I dissent because I believe that, under established standards of review of summary judgment orders, genuine issues of material fact exist as to both the objective and subjective prongs of Norman's Eighth Amendment excessive force claim.

## I

It might be best to begin by listing those points in the majority opinion with which I agree. We agree that we must accept as true Norman's allegations that (1) Sergeant Taylor swung a set of keys at him and missed twice before striking him on the thumb, and (2) Taylor pushed him against the wall and threatened to stab him with the keys. See maj. op. 1261–62. I assume that the majority would agree that we must also accept as true Norman's other allegations with regard to the attack itself—that Taylor swung the keys three times in the direction of Norman's face, that Norman was struck on the hand while trying to protect himself, and that the keys were "large brass cell keys."[1]

---

6. Norman proffered none of these requests or any evidence that he in fact had submitted them. In the only material submitted beyond Norman's complaint (and affidavit, which is merely a restatement of the complaint's allegations), Norman complained in an Inmate Grievance Form that a prison doctor thought that he was "faking" his hand injury. *Id.* at 66.

7. The incident took place in the Intake Department of the Norfolk jail, where prisoners are fingerprinted, searched, logged into the comput-

er, and provided jail clothing, and their personal belongings inventoried. All of this occurs as part of their admission to the jail and prior to being taken to their cells for the first time. *Id.* at 34. Thus, although possible, it is unlikely that the March 5, 1990, medical examination occurred prior to the incident.

1. Affidavits of Allain Norman (J.A. 63), Karl Robertson (J.A. 51), and Curtis Hammonds (J.A. 52); *see also* affidavit of Curtis Hammonds, J.A. 70 ("those big keys").

We disagree first and foremost about what the record shows with regard to the extent of the injury received by Norman. The majority characterizes the injury evidence as follows: "At most, Norman received a sore thumb as a result of the incident, and, as the district court correctly found, there is no record evidence even to support his claim of this injury." Maj. op. at 1264. Norman, an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate "record evidence" on his behalf—he may not, for instance, retain a specialist or make an appointment to see his personal physician. Under these circumstances, his affidavits and those of his fellow inmates are about the best that can be expected from him at this point in the proceedings. Our disagreement, however, goes beyond our respective views of the record.

"The objective component of an Eighth Amendment claim is ... contextual and responsive to contemporary standards of decency.... When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, —— U.S. at ——, 112 S.Ct. at 1000 (internal quotation omitted). The "objective component" is the amount of *force* used. The extent of injury is a factor to be considered on the ultimate question— did the force inflict wanton and unnecessary pain and suffering?—and I do not doubt that evidence of injury will often conclusively belie an inmate's account of the use of force against him. If we are to focus on the "injury," however, we must be careful to examine every aspect of it.

The majority opinion is constructed on the basis of the "negative implication" it finds in the Court's statement that the injuries suffered by the inmate in *Hudson* "provide[d] no basis for dismissal of his § 1983 claim." Maj. op. at 1262 (quoting *Hudson*, —— U.S. at ——, 112 S.Ct. at 1000). This implication is that "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used." Maj. op. at 1262. This is, standing alone, a fairly unremarkable proposition—if an inmate is complaining solely about a physical injury suffered as a result of little more than a "push or a shove," certainly the extent of the injury *could* be so minor as to compel a finding that the force used to inflict it was commensurately minor. *De minimis non curat lex*—the law cares not for trifles— certainly applies with respect to the force used against an inmate. Norman's alleged injuries, however, are not so trifling as to foreclose a jury finding that the *force* used was itself not trifling.

The majority focuses almost exclusively on the physical manifestations of injury to Norman's thumb. Had Norman complained only of the physical damage resulting from the attack, and had the harm been limited to, say, some minor swelling, this focus might be justified. Norman's affidavits, however, state that he suffered "great pain and swelling" when he was struck on the hand by a "large set of brass keys," that three years later he still suffered pain, that he does not have full use of his right hand, and that he may have suffered emotional distress and psychological injury as a result of the attack and the subsequent threats.[2] His "injury," then, also comprises pain, fear, and possible psychological damage.[3] I conclude that the

2. Norman's statements in the record include the following:

(1) Letter attached to complaint filed on January 10, 1991 (ten months after the incident)— "By me putting my hand up to protected my face Sgt. Taylor then caught my right hand hitting me on my thumb with his cell keys causing my hand to swell[]....  [After the threat] I became very scared of what this man may or may not do to me so I remain quiet until I was moved....  My whole time in the Norfolk jail I feared for my life thinking that Sgt. Taylor would hurt me or even kill me or have another inmate to hurt me...." J.A. 10.

(2) Affidavit signed February 9, 1992—"I am still experiencing pain and discomfort ... [and]

I'm ... seeking compensation for my personal, physical and mental and emotional suffering." J.A. 50.

(3) Affidavit signed December 31, 1992—"[I] placed my hands over my face to shield the keys. The keys hitting on the back part of my thumb, causing great pain and swelling....  As of today, I still suffer pain around my right thumb, which leaves me with a disadvantage not having full use of my right hand, since the persistence of pain have continued." J.A. 64.

3. The inmate in *Hudson* "did not allege that he feared that the beating incident would be repeated or that it had caused him anxiety and depression....  'Pain' in its ordinary meaning

record, when viewed in the light most favorable to Norman, demonstrates at least a genuine issue about whether Norman received more than "a sore thumb." I further conclude that the injury allegations foreclose summary judgment on the *de minimis* injury basis espoused by the majority.

## II

The majority's alternative basis of affirmance is that Norman failed to rebut Taylor's allegation that Norman was causing a disturbance. Taking this allegation as true, the majority concludes that the force allegedly used, *i.e.* striking at Norman's face with a large set of brass keys, was justified "in a good faith effort to maintain or restore discipline."[4] Maj. op. at 1263 n. 5. I take this to imply that, had Taylor been successful in striking Norman's face with one or more of the blows, his Eighth Amendment claim would have nonetheless come up short on the subjective side of the excessive force test and would have died at the summary judgment stage, *regardless of the injuries* inflicted.

It is true that Norman failed to expressly deny that he had created a disturbance. The district court gave the required *Roseboro* notice[5] inviting Norman to submit affidavits "that show that [the parties] truly disagree about one or more important facts present in this case," but what turned out to be a pivotal question—were you creating a disturbance?—was never directly posed to him. Because Norman was not represented by counsel,[6] his pleadings should be viewed with

a certain degree of latitude. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (inmate's pro se complaint held to less stringent standards); *cf. Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986) (where pretrial order did not inform inmate of required degree of specificity for summary of testimony from potential witnesses, the court should have informed the inmate of this deficiency and afforded him the opportunity to cure). In any event, I believe that a fair reading of Norman's submissions supports his argument that he essentially denied creating a disturbance and that the only provocation for the attack was his cigarette.[7]

I would reverse the judgment of the district court and remand for further proceedings.

I am authorized to state that Chief Judge ERVIN, Judge PHILLIPS, Judge MURNAGHAN, and Judge MICHAEL join in this dissent.

---

surely includes a notion of psychological harm." *Hudson,* —— U.S. at ——, 112 S.Ct. at 1002 (Blackmun, J., concurring in the judgment).

4. It is unclear how it was determined that the force alleged by Norman was a justifiable response to the disturbance alleged by Taylor. According to Sergeant Taylor, the alleged disturbance was not one that required the use of any force. In his affidavit, he stated that he merely "ordered Norman to quiet down and to put out his cigarette. I also closed and locked the door to the passageway...." Affidavit of Sergeant Otis Taylor, J.A. 34–35.

5. *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975) (per curiam).

6. Counsel was appointed only after the appeal had been filed. Although Norman may have received some assistance from a student involved in a post-conviction assistance program at a Virginia law school, he was still proceeding pro se and is entitled to the benefit of the rules established to help level the playing field in such cases.

7. "I was in the area I was told to be in when Sgt. Taylor saw me getting ready to smoke a cigarette, he ran up to me than began swinging his cell keys...." Complaint, J.A. 10. Taylor submitted no other affidavits corroborating his version of the events, although there were other deputies present. *See* Affidavit of Otis Taylor, J.A. 34 ("[Norman] began yelling.... This was disruptive to prison security as the deputies were attempting to create an accurate list of the inmates ...").