**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANTHONY TYRONE WILLIAMS,
Plaintiff-Appellant,

v.

CATHY DEHAY, Warden; DEANA

LANGSTON, Nurse; SERGEANT DAY;
SERGEANT WRIGHT; EARL SMITH,
Sergeant; SERGEANT ADCOCK,
Defendants-Appellees.

No. 94-7114

ANTHONY TYRONE WILLIAMS,
Plaintiff-Appellant,

v.

RAY ISGETT, Sheriff, Berkeley
County; CATHY DEHAY, Warden,
Berkeley County Jail,
Defendants-Appellees.

No. 94-7115

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-93-1947-2-18AK, CA-93-1607-2-18AK)

Argued: February 1, 1996

Decided: March 21, 1996

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Lori Campione, Third Year Law Student, Bruce E. Cunningham, Third Year Law Student, Neal Lawrence Walters, Supervising Attorney, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Sandra J. Senn, STUCKEY & SENN, Charleston, South Carolina; Andrew Steven Halio, HALIO & HALIO, Charleston, South Carolina, for Appellees. **ON BRIEF:** Elliott T. Halio, HALIO & HALIO, Charleston, South Carolina, for Appellee Langston.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Anthony Tyrone Williams, at all relevant times a pre-trial detainee at the Berkeley County Jail in South Carolina, filed two separate actions under 42 U.S.C. § 1983 against various prison officials. The first action, filed against the Warden, the prison's nurse practitioner, and a number of guards, alleged that the named officials were deliberately indifferent to Williams' serious medical needs in violation of the due process clause of the Fourteenth Amendment for failing to provide him with a pain medication (a narcotic) and a sleep aid. The second action, filed against the Warden and Sheriff Isgett, alleged that Williams' due process right to be free from the excessive use of force was violated when Williams was attacked with mace by Sheriff Isgett while Williams was securely locked in his cell. These two actions were consolidated and the district court granted summary judgment in favor of all defendants. Finding no reversible error, we affirm.

I.

Williams first alleges that various prison officials were deliberately indifferent to his serious medical needs when they refused to give him

2

Darvocet, a narcotic, and Restoril, a sleep aid. The prison officials refused to give Williams these two particular medications because of a jail policy prohibiting the dispensation of narcotics and sleep aids without a court order and because Dr. Hodges, Williams' doctor both prior to and during his incarceration at the Berkeley County Jail, refused to prescribe any narcotics or sleep aids. Williams, who was diagnosed as HIV-positive, had one of his arms amputated, and has insomnia, did receive numerous other drugs on a daily basis to treat his various conditions.

To establish a due process violation, Williams must show that the prison officials acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).[1] Recently, in Farmer v. Brennan, the Supreme Court adopted a subjective test for deliberate indifference, "hold[ing]" that,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

114 S. Ct. 1970, 1979 (1994) (emphasis added). Because Williams cannot establish that any of the officials were deliberately indifferent, the district court properly granted summary judgment in favor of the defendants.

_____

[1] While a claim of deliberate indifference to serious medical needs normally arises under the Eighth Amendment's cruel and unusual punishments clause, see Estelle, 429 U.S. at 102-05, Williams' claim is analyzed under the due process clause because he was a pretrial detainee and thus not subject to punishment of any kind. This distinction is of no import, however, because the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the due process clause of the Fourteenth Amendment and the cruel and unusual punishments clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir 1988) (citing Estelle, 429 U.S. at 104-06).

3

With respect to appellee Nurse Langston, the evidence is uncontroverted that she consulted with the Warden about Williams' request for Darvocet and Restoril on numerous occasions. See J.A. at 119, 120, 125. Nurse Langston also informed Williams about the prison policy concerning narcotics and sleep aids on numerous occasions and checked to see if Williams had complied with the policy by obtaining a court order that he be given Darvocet and Restoril. See id. at 119-31. Additionally, Nurse Langston had no responsibility for prescribing, dispensing or approving the two drugs Williams claims he was denied. Thus, far from being deliberately indifferent, Nurse Langston did everything she could to help Williams obtain the Darvocet and Restoril he requested. Cf. Smith v. Barry, 985 F.2d 180, 184 (4th Cir.) (affirming directed verdict for prison guards who were not in a position to "act meaningfully" in regards to a prisoner's medical needs), cert. denied, 114 S. Ct. 207 (1993).

With respect to the other appellees, Williams' claim also fails. The record is unclear as to whether a doctor ever prescribed Darvocet and Restoril. However, even assuming that a doctor did prescribe these two drugs, Williams has failed to produce any evidence that he ever obtained a court order. While Williams now claims that he has a court order that he be given these medications or be transferred to a facility equipped to handle his medical condition, see J.A. at 100, 192, aside from Williams own assertions, there is no evidence of such a court order anywhere in the record. More importantly, even if Williams had a court order, there is absolutely no evidence in this record that Williams ever told any prison official about such an order. In the absence of evidence that Williams obtained a court order and informed prison officials about the order, the officials can in no way be deemed to have been deliberately indifferent under the Farmer standard.

Additionally, even if there were no policy to control the dispensation of sleep aids and narcotics, the appellees would still be entitled to summary judgment on the ground that they were not deliberately indifferent because Dr. Hodges, Williams' doctor both prior to and during Williams' incarceration, clearly did not prescribe narcotics or sleep aids for Williams. See J.A. at 190. As Williams himself acknowledges in his opposition to summary judgment:

> On each occasion, [Dr. Hodges] refused to prescribe me anything for sleep, or depression. I was a client of his prior

4

to being incarcerated. <u>I asked him</u> on a number of occasions <u>to prescribe</u> me <u>medication for depression</u> when I visited Mental Health as a free citizen. . . . [Dr. Hodges] has <u>never prescribed me anything</u>.

<u>Id</u>. (emphasis added). Prison officials are not "deliberately indifferent" to serious medical needs when they follow one of two conflicting medical opinions.

II.

Williams next claims that his due process right to be free from the use of excessive force was violated when Sheriff Isgett attacked Williams with pepper mace. Williams alleges that on May 25, 1993, while he was securely locked in his cell, Isgett attacked him with mace until he fell to the floor and lost consciousness. According to Isgett, Isgett went to Williams' cell on May 25 to inform Williams that further attempts to harm officers by slinging, or threatening to sling, blood would lead to criminal charges. Isgett stated that during the conversation Williams became agitated and threatened Isgett. Isgett, who noticed that Williams had a cut on his elbow, became concerned for his safety and sprayed Williams with mace. Williams denies that he ever threatened Sheriff Isgett or any other prison official or that he became agitated while speaking with Isgett.

The due process clause protects a pretrial detainee from "`the use of excessive force that amounts to punishment.'" **2** <u>United States</u> v. <u>Cobb</u>, 905 F.2d 784, 788 (4th Cir. 1990) (quoting <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 395 n.10 (1989)), <u>cert</u>. <u>denied</u>, 498 U.S. 1049 (1991). In <u>Norman</u> v. <u>Taylor</u>, 25 F.3d 1259, 1263 (4th Cir. 1994) (<u>en banc</u>), <u>cert</u>. <u>denied</u>, 115 S. Ct. 909 (1995), this court, sitting <u>en banc</u>, held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is <u>de minimis</u> . Since Williams has at most established a <u>de minimis</u> injury (and probably not even that)

_____

**2** Again, because Williams was a pretrial detainee at the time of this incident, his claim is analyzed under the due process clause of the Fourteenth Amendment rather than under the Eighth Amendment. <u>See supra</u> note 1.

5

and there are no extraordinary circumstances the district court properly granted summary judgment on Williams' excessive force claim.

Immediately after the mace, which effects are minimal and last only thirty minutes, was administered, Williams was given soap, ice and water to clean up. Williams claims that he has continuing lower back pain and shoulder injuries as a result of falling down after being maced. However, the medical records offer no evidence whatsoever that he ever complained about his alleged shoulder and back injuries despite repeated visits to medical personnel. See J.A. at 119-31. Moreover, on June 23, just eight days after he filed his complaint alleging the use of excessive force and noting his continuing back and shoulder pain, Williams went to the prison's nurse practitioner complaining of only a headache and left eye irritation which had begun two days earlier and "denie[d] . . . any other complaints or requests." Id. at 129. Transitory back and shoulder aches of limited duration is at most a de minimis injury.

Williams responds that he was denied medical attention for these injuries. See Appellant's Br. at 28 & n.6. This last claim we reject also. Williams went to medical practitioners numerous times after he was sprayed with mace on May 25 without ever reporting the supposed shoulder and back injuries. Williams cannot withstand summary judgment by merely alleging that he was injured, see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986), especially given that, as counsel readily conceded at oral argument, Williams saw medical personnel on many occasions after the macing incident. Thus, Warden DeHay and Sheriff Isgett are entitled to summary judgment on Williams' claim that the use of mace constituted excessive force in violation of the due process clause.

6

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

7