**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL R. MCCREIGHT, SR.,
Plaintiff-Appellant,

v.

WILLIAM DAVIS, Warden; VICTOR

JOHNSON, Lieutenant; SERGEANT
SESSIONS; CORRECTIONAL OFFICER
SALMOND; CORRECTIONAL OFFICER
SEAWARD; BRYAN, R. N.; JOE, R. N.,
Defendants-Appellees.

No. 97-7826

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Patrick Michael Duffy, District Judge.
(CA-97-1835-23AK-6)

Submitted: November 18, 1998

Decided: January 13, 1999

Before MICHAEL and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Michael R. McCreight, Sr., Appellant Pro Se. Robert Thomas King,
WILLCOX, MCLEOD, BUYCK & WILLIAMS, P.A., Florence,
South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael McCreight, a South Carolina inmate, appeals from the district court's order granting summary judgment in favor of the Defendants on his claims brought under 42 U.S.C.A. § 1983 (West 1994 & Supp. 1998). We have reviewed the record and the district court's opinion and find no reversible error in the denial of relief on McCreight's claim that the Defendants used excessive force against him when they sprayed him with mace and placed him in handcuffs and leg irons. Accordingly, we affirm the denial of relief on this claim on the reasoning of the district court. (McCreight v. Davis, No. CA-97-1835-23AK-6 (D.S.C. Dec. 5, 1997)).

I.

According to McCreight, on January 17, 1996, a correctional officer gave him a pen with which to sign certain documents. McCreight refused to return the pen and then flushed it down the toilet in view of the officer. Later, Defendant Sessions arrived at McCreight's cell demanding to know the whereabouts of the pen and then sprayed mace "into my face, on my body, into my cell on my bed, walls, etc. and told me something to the effect that `he'd been waiting a long time to teach my sorry-white-ass a lesson.'" Sessions returned to McCreight's cell a short time later and "told me to come to my cell door to be restrained. I came to the door to be restrained and didn't say or do anything towards Srgt. Sessions." When the officers came to put McCreight into restraints, he "sat down on[his] bed to show that I posed no threat, and even tried to lay down face-down when staff entered" his cell.

McCreight alleged that Officers Salmond, Seaward, and "two or three" others entered his cell and slammed his head into a brick wall and brick bed, squeezed his testicles, and bent and twisted his back.

2

The videotape of the incident included in the record shows the officers entering McCreight's cell and placing him in handcuffs and leg irons on his bed. However, the camera's view is blocked part of the time by the officers' backs. McCreight admitted that, when taken out into the hall, he cursed, threatened and made racial remarks directed at the guards. In response, Defendant Salmond "purposely tripped me with a steel chain he had wrapped around my legs," causing McCreight to strike his head against a wall and render him unconscious. The videotape appears to corroborate this last allegation.

When he regained consciousness, McCreight claimed that the pain in his back "was more severe than it had ever been in my life," but that he was examined by prison nurses who told the guards that McCreight did not need medical care. McCreight's medical records included in the record show that he has a history of low back pain caused by spinal stenosis and a bulging disc. He was then "dragged" into the shower area, "stomped and kicked [in the] legs and stomach," and laid "face-down on the shower floor, hancuffed [sic] behind my back, in leg shackels, in obvious pain." On the videotape, McCreight can be heard repeatedly complaining of back pain and he is unable to stand.

McCreight was then carried back to his cell where, he alleges, Defendant Salmond and others kicked him and slammed his head against a metal door frame and concrete floor. On the videotape, McCreight can be heard screaming, but the camera's view is blocked completely by one or more of the guards. McCreight was then allowed to shower in his cell. After he showered, the Defendants removed McCreight's clothing and placed him face-down on his wooden bed frame, naked, in four-point restraints for four hours. During this time:

> Defendants and others kept coming to my cell door and threatening me, making lewd comments, telling me they were going to rape me up the anus and ass, putting keys against the door to make it seem they were entering my cell, laughing and whistling at me being spread-eagle and naked on [the] bed.

On the videotape, McCreight is never shown resisting the guards in any way and is unconscious--or semi-conscious--for a good part

3

of the time. He is also unable to stand except for a brief period after the shower, and he is holding his back, apparently in pain. The tape stops at the point when he is put in the four-point restraints. After an internal investigation, the use of four-point restraints was determined to be "unfounded." McCreight claims that, as a result of further injury to his back sustained during this incident, he has had surgery to remove a ruptured disc and wears a back brace.

On these facts, the magistrate judge recommended granting summary judgment to the Defendants with respect to McCreight's excessive force claim challenging the use of mace, handcuffs, and leg irons, and denying their motion for summary judgment with respect to the remaining claims. The district court disagreed with the magistrate judge and found that the Defendants were entitled to summary judgment as to all claims. The court found that, because McCreight's allegations of beatings were unsupported by evidence other than his affidavits, the Defendants were entitled to summary judgment. With respect to the use of four-point restraints, the district court found that the Defendants were entitled to qualified immunity because, at the time of the incident, the law governing the use of such restraints was not well-settled. With respect to McCreight's allegations of deliberate indifference to his serious medical needs, the district court concluded that he stated, at best, medical negligence not actionable in a § 1983 action. Finally, the district court found that there was no evidence to support the imposition of supervisory liability as to Warden Davis. McCreight appeals.

II.

We review grants of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). "[S]ummary judgment is proper `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' des-

4

ignate `specific facts showing that there is a genuine issue for trial.'" Id. at 324.

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves
> . . . .

Id. In determining whether this showing has been made, the factual evidence and all inferences to be drawn therefrom are reviewed in a light most favorable to the party opposing the motion. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Finally, summary judgment is not appropriate if the resolution of material issues depends upon credibility determinations. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). With this standard in mind, we find that summary judgment was improperly granted to the Defendants on three of McCreight's claims.[1]

A. Excessive force claims.  To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, he must satisfy a subjective requirement that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6 (1993). In the context of a prison disturbance, this question "ultimately turns on `whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986). When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most

_____

[1] McCreight has abandoned his supervisory liability claims against Warden Davis by failing to raise them in his informal brief. See 4th Cir. R. 34(b).

5

favorable to the claimant, "will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322.

In addition to satisfying the subjective requirement, the inmate must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were "objectively harmful enough" to offend "contemporary standards of decency." Hudson, 503 U.S. at 8 (internal quotation marks omitted). In determining whether the objective component is satisfied, the factfinder must evaluate the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose. Id. A prisoner asserting malicious and sadistic use of force need not show that such force caused an "extreme deprivation" or "serious" or "significant" pain or injury to establish a cause of action. Hudson, 503 U.S. at 9. All that is necessary is proof of more than a de minimis pain or injury. Id. Indeed, the objective component can be met by "the pain itself," even if an inmate has no "enduring injury." Norman v. Taylor, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc).

In his sworn affidavit filed with his response to the Defendants' motion for summary judgment, McCreight stated that he was beaten by Defendants Sessions, Salmond, and Seaward on four occasions: (1) when they entered his cell to place him in handcuffs and leg irons; (2) when he was taken to the shower area; (3) when he was placed in four-point restraints in his cell; and (4) when they intentionally tripped him while he was in chains. The Defendants' affidavits contradicted McCreight's version of the events.

The magistrate judge did not address these claims. The district court determined that McCreight "failed to produce sufficient evidence to support his claim that Defendants used excessive force. . . . The sole `evidence' that McCreight has produced in support of his contentions is an affidavit which essentially restates the allegations in his pleadings." McCreight filed a second affidavit in which he describes certain portions of the videotape of the incident and states that the camera must have been turned off or turned away when the alleged beatings occurred. The district court discounted this affidavit as well, finding that McCreight "simply offers the unsubstantiated conclusions that the video camera must have been `off' or `out of view' when the alleged beatings occurred, or that the videotape has

6

been `cut' and `altered.'" The court concluded that "[s]ince [McCreight's] `evidence' consists of nothing more than such affidavits, summary judgment is proper."

We find that the district court improperly applied the summary judgment standard by failing to give proper consideration to McCreight's affidavits and to the videotape. See Celotex Corp., 477 U.S. at 324. McCreight's first affidavit provided a detailed factual account of the incident which, if believed, supports an excessive force claim. This is especially so where, as here, there is no allegation by anyone that McCreight was physically resisting the guards or otherwise physically abusive. See Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) ("when a prisoner is held and calmly beaten by two guards in response to a verbal argument, the de minimis level is more easily reached"). In discounting the second affidavit, the district court necessarily made an improper credibility determination. Moreover, the videotape itself appears to corroborate at least some of McCreight's allegations, particularly his claim that the guards intentionally tripped him by yanking his ankle chain. Accordingly, we vacate the award of summary judgment with respect to this claim and remand for further proceedings.

The district court also granted summary judgment to the Defendants on McCreight's claim that the Defendants used excessive force by placing him in four-point restraints. The district court found that the Defendants were entitled to qualified immunity because "Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996), the Fourth Circuit's most recent and most definite pronouncement regarding the use of four-point restraints . . . was not decided until three months after the incident that gave rise to this claim," the law on the use of four-point restraints was not "clearly established." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (defining qualified immunity). We find that the district court's reliance on Williams in this context was misplaced and that the Defendants were not, on these facts, entitled to qualified immunity.

The "unnecessary and wanton infliction of pain" by prison officials violated the Eighth Amendment long before Williams was decided. Accepting as true McCreight's version of the events, the Defendants placed him naked in four-point restraints for four hours--without any

7

penological justification--and either caused or greatly exacerbated a serious back injury. The magistrate judge found that "there was no allegation, nor is there evidence on the videotape, that [McCreight] continued to yell, was disobedient, or remained hostile. The defendants assert he was placed in restraints to prevent further assaults on staff. However, [McCreight] could not have assaulted staff or other inmates once he was placed in his cell." See United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonable related to a legitimate nonpunitive governmental objective."). Indeed, the use of four-point restraints on McCreight was later determined to be "unfounded." Accordingly, we vacate the award of summary judgment on this claim and remand to the district court for further proceedings.

B. Deliberate indifference claim. McCreight alleged that Defendants Bryan and Joe were deliberately indifferent to his serious medical needs when they ignored his repeated complaints that his back hurt and refused to review his medical records which would have alerted them to his spinal condition. See Estelle v. Gamble, 429 U.S. 97 (1976). The district court concluded that, "[i]t is unclear whether Defendants Joe and Bryan did, in fact, review [McCreight's] medical history at this point--however, it is clear that they did examine [McCreight] for signs of injury and subsequently released him back to the prison officials."

The affidavit submitted by Nurse Joe states that:

> 6. Nurse Bryan and I assessed Inmate McCreight's physical condition and checked his vital signs. He had a small amount of blood in his sputum, which we cleaned off his face; we noted no active bleeding. He also complained that his back hurt, but he did not appear to need any immediate treatment. . . .
>
> 7. Inmate McCreight's vital signs were normal, he appeared to be in no serious distress, and he appeared to have suffered no apparent injury. He was, therefore, released to the care of the officers.

8

Nurse Bryan's affidavit provides a similar account. The videotape shows McCreight lying on the floor unconscious and Nurses Joe and Bryan cleaning blood off his face with toilet paper. When they turned him over, McCreight said--in a half-conscious state--that his back hurt and that he could not stand up and asked to see a doctor. Joe and Bryan checked McCreight's pulse and blood pressure and are seen leaving him still in a state of unconsciousness, or semi-unconsciousness, lying on the floor.

On this conflicting evidence, we find that there is a genuine dispute as to a material factual issue on McCreight's medical claim that should have prevented summary judgment.

III.

In sum, we vacate and remand for further proceedings that portion of the district court's order granting summary judgment on McCreight's claims that the officers violated the Eighth Amendment by beating him, placing him in four-point restraints, and were deliberately indifferent to his serious medical needs. We express no opinion as to the Defendants' ultimate liability on these claims; we find only that, in light of the evidence before the district court, summary judgment was improper. We affirm in all other respects. We deny McCreight's motions for emergency relief, for stay pending appeal, to appoint counsel, and to appoint a specialist to review the videotape. We deny McCreight's motion for oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

9