THACKER, Circuit Judge,
dissenting:
With all due respect to the majority, I must dissent. Under prevailing Supreme Court precedent available at the time of the assault in this case, it was clearly established that an officer could not maliciously or sadistically impose harm on a custodial, handcuffed, and completely.nonresistant inmate without violating the inmate’s Eighth Amendment right to be free from cruel and unusual punishment — and any reasonable officer would have known as much.
As the district court correctly concluded, Appellant Crum is not entitled to qualified immunity in as much as “[i]t cannot credibly be claimed that [Appellant Crum] w[as] not on notice that unnecessarily inflicting pain on [Hill] violated [Hill’s] constitutional rights.” Hill v. O’Brien, No. 7:08-cv-00283, 2011 WL 4566442, at *4 (W.D.Va. Sept. 30, 2011); see also Hill v. O’Brien, No. 7:08-cv-00283, 2012 WL 517544, at *4 (W.D.Va. Feb. 16, 2012) (“It is apparent — and cannot be credibly denied — that a reasonable officer in Crum’s position in 2007 would have known that repeatedly punching a restrained prisoner in the stomach, ribs, and head for a sustained period, for no other reason but to punish him for a behavioral issue, ■ was-unlawful in light of pre-existing law.”). Therefore, I would affirm the ruling of the district court.
I.
This case involves the intersection of two judicial doctrines: qualified immunity and the use of excessive force in violation of the Eighth Amendment’s prohibition on cruel and unusual punishment.
Whether Appellant Crum is entitled to qualified immunity for. his alleged assault on inmate Hill requires a familiar two-pronged inquiry. That inquiry requires a court to determine (1) “whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right,” Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal citations omitted) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); and (2) “whether the right at issue was ‘clearly established’ at the time of defendant’s alleged misconduct,” id. (quoting Saucier, 533 U.S. at 201, 121 S.Ct. 2151) (holding that the sequence of the Saucier inquiry is not mandatory).
A.
Here, Appellant Crum has conceded that the first prong of the qualified immu *326 nity analysis — the alleged violation of a constitutional right — is satisfied. Appellant’s Br. 15 (“[T]he evidence would allow a reasonable jury to conclude that he had violated Hill’s constitutional rights.”). More specifically, Crum’s repeated blows allegedly levied against Hill for “a good solid two minutes,” J.A. 142,[1] while Hill was restrained, cooperative, and “attempting] to hunch over [a] desk,” id., in an effort to protect himself, even if they may have caused only minor injuries, clearly constituted excessive force in violation of his Eighth Amendment right.
B.
This case then turns on the second prong of the qualified immunity analysis: whether the aforementioned right was clearly established. See Pearson, 555 U.S. at 232, 129 S.Ct. 808. When available, we consider “decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose” to discern whether a right was clearly established. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir.2004) (internal quotation marks omitted). To be “clearly established,”
[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted).
Thus, we must inquire whether on November 1, 2007, a reasonable officer could have believed that repeatedly striking a restrained, cooperative, hunched-over inmate, so long as only de minimis injury resulted, “was lawful[ ] in light of clearly established law and the information the officer[] possessed.” Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Appellant Crum claims that he was entitled to assault Mr. Hill unabated for over two minutes so long as any resulting injury was de minimis. Indeed, at oral argument, Appellant Crum argued, in essence, that there were no limits to excessive force as long as there were no marks left on the victim, or in other words, “as long as he didn’t hurt him, as long as he didn’t cause more than de minimis injury.” Oral Argument at 2:17, Hill v. Crum, (No. 12-6705), available at http://www.ca4.uscourts.gov/ OAaudiotop.htm. Not so. Under controlling Supreme Court precedent at the time — not to mention applying pure common sense — no reasonable officer could have believed such abuse was lawful.
1.
Controlling Precedent
On November 1, 2007, the controlling Supreme Court authority for excessive force cases in the Eighth Amendment context was Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). One need only read the first paragraph of Hudson to realize the right at issue was clearly established:
This case requires us to decide whether the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury. We answer that question in the affirmative.
503 U.S. at 4, 1Í2 S.Ct. 995. The Supreme Court went on to emphasize as follows:
*327 When prison officials maliciously and sadistically use force to cause harm, contemporary standards of, decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment ■ would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
Id. at 9, 112 S.Ct. 995 (emphasis supplied) (citation omitted).
At the time of the incident in this case, Hudson had been controlling Supreme Court-precedent for 15 years. In fact, this was the controlling law even before Hudson. The Hudson Court merely extended its prior holding in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (regarding the legal standard for an Eighth Amendment excessive force claim arising out of a prison riot), to standard claims by inmates against prison officials for the use of excessive force. Hudson, 503 U.S. at 6-7, 112 S.Ct. 995. Under Whitley and Hudson, “ ‘the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.’ ” Id. at 5, 112 S.Ct. 995 (quoting Whitley, 475 U.S. at 319, 106 S.Ct. 1078). The Court explained that “the core judicial inquiry” in excessive force cases is not whether a certain quantum of injury was sustained, but rather “whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.” Id. at 7, 106 S.Ct. 1078; see also Wilkins v. Gaddy, 559 U.S. 34, 36, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (“In requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson.” (emphasis supplied)). Thus, although this circuit misinterpreted Hudson in Norman v. Taylor, 25 F.3d 1259 (4th Cir.1994), the fact remains that Hudson and Whitley set forth the long standing and clearly established controlling precedent at the time of this incident.
2.
Use of Force
The law was, and is, clear; the proper focus is on the force used, not on the resulting injury. In determining whether force is permissibly applied, the Supreme Court has held that “the extent of injury suffered by an inmate is one factor” of many that should be considered. Hudson, 503 U.S. at 7, 112 S.Ct. 995 (emphasis supplied); see also Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir.1996) (“The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis [of an Eighth Amendment excessive force claim].”). Other factors include “[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the' severity of a forceful response.” Hudson, 503 U.S. at 7, 112 S.Ct. 995 (internal quotation marks omitted).
Even if we assume Hill’s injuries were minor — which he does not concede — analysis of the other factors make clear Crum’s alleged use of force could be deemed excessive. Although there had been a prior disturbance in Hill’s cell that resulted in a broken sprinkler, there was no reason to exercise force to restore order — order had already been restored. Indeed, the source of the disturbance — Hill’s cellmate — had been removed from the cell at the, time of the incident at issue. Hill remained restrained, compliant, and cooperative when the prison guards arrived on the scene. See J.A. 141-42 (“Officer Crum came over *328 to the cell and requested that we submit to hand restraints. I submitted to hand restraints. He placed handcuffs on us.... [Officer Crum] began to tell me I couldn’t take my legal work out of the cell which was soaked with water. During that time . I put my legal work down, I put the legal work down.”). Appellant Crum does not refute Hill’s testimony. A lone cooperative inmate, handcuffed and hunched over a desk could not pose a reasonable threat to a prison officer sufficient to justify the use of force. Moreover, Appellant Crum did not temper the severity of the force employed, but, rather, allegedly continued beating Hill for a total of two minutes. These factors indicate that Crum exercised force, not in a good-faith effort to restore order, but, rather, maliciously and sadistically simply to cause harm.[2]
3.

Norman v. Taylor

Critically, as the district court correctly pointed out, the facts of Hudson — where a restrained, cooperative inmate in the course of being transported to another cell, was physically beaten by prison officials— are far more analogous to the present case than the facts of Norman. Indeed, Norman is distinguishable from this case.
Unlike the present case, the inmate in Norman had himself created a disturbance by yelling to other inmates which disrupted prison security and justified at least some response. Norman, 25 F.3d at 1263 n. 5 (“On this understanding of the incident, there can be no question that the district court properly held that the force used was justified in a good faith effort to maintain or restore discipline.” (internal quotation marks omitted)). Here, as the majority notes, it was Hill’s cellmate, not Hill, who had broken the sprinkler and created the initial disturbance. Ante at 314-15. And, in any event, the disturbance had been quelled at the time of this incident.[3] As a result, a reasonable officer could not have relied on Norman to justify the sustained beating of a restrained and cooperative inmate.
II.
Ultimately, whatever erroneous interpretive gloss Norman placed on Hudson, see Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (abrogating Norman), on November 1, 2007, it would have been readily apparent to a reasonable officer that where a disturbance had already been abated, he could not assault a restrained, compliant, and cooperative inmate for “a good solid two minutes,” J.A. 142, punching and elbowing him repeatedly in the abdomen and head, without applying excessive force in violation of the inmate’s Eighth Amendment right to be free from cruel and unusual punishment. Accordingly, I would hold *329 Appellant Crum is not entitled to qualified immunity, and affirm the decision of the district court.

. Citations to the "J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. According to Hill, Crum threatened him saying "break another sprinkler, I’ll break your neck.” J.A. 52. Hill’s testimony further revealed that Crum’s use of force may have had another malevolent purpose — retribution. Hill testified that in the month leading up to the incident at issue, he filed a grievance with the prison against Officer Crum. Id. at 145 ("I had Officer Crum written up previously.”).

. It should come as no surprise that this distinction — that is, the distinction between instances where force is applied to restore order and instances where it is applied without justification — is of significance. In fact, we recognized this exact distinction and its constitutional consequences in Stanley v. Hejirika, 134 F.3d 629 (4th Cir.1998). In Stanley, we found that "bruises, swelling, and a loosened tooth sustained in a fracas that occurred while prison guards were trying to quell a disturbance are constitutionally insignificant and distinct from a loosened tooth and a cracked dental plate sustained in the context of punishment deliberately inflicted by guards because of a verbal argument.” Id. at 638.