OPINION
DUFFY, District Judge:
Appellants Locklear, Maddox, Fenton, Hicks, Aulu, Morgan, and Nelson appeal from a jury verdict in the amount of $1 actual damages and a total award of $9,500 punitive damages. Appellants argue, inter alia, the district court erred in denying their motion for judgment as a matter of law. For the reasons set forth below, we reverse.
I.
Jackson brought claims under 42 U.S.C. § 1983 against Appellants for excessive force violating his Eighth Amendment rights. Appellants worked at the Maryland Correctional Adjustment Center, where Jackson was incarcerated during *99 the relevant times in this case. Appellants were the response team sent to Jackson’s cell by the duty officer who had already decided to remove Jackson from his cell for an earlier disturbance and to place him in the isolation cell. Jackson alleged Appellants used excessive force January 11-18, 1994, in two instances: (1) Appellants’ use of pepper spray inside Jackson’s cell, and (2) Appellants’ placement of Jackson into an isolation cell known as “the pink room” for two days wearing only underwear and in three-point mechanical restraints and after spraying him with pepper spray.
On January 11, 1994, Lieutenant Locklear responded to Jackson’s cell as the Duty Lieutenant in charge of all housing on that particular shift. The shift commander had ordered Jackson removed from his cell and placed in an isolation cell because he had been causing a disturbance. Lieutenant Locklear attempted to carry out that order with authorization to use pepper spray if necessary.
Jackson refused to comply with removal procedures and the orders of Lieutenant Locklear. Pursuant to regulations, Lieutenant Locklear ordered Jackson to remove and deliver his clothing for inspection prior to opening Jackson’s cell. Also according to regulations, Appellants then began to videotape their actions. Jackson still failed to comply, and Lieutenant Locklear sprayed pepper gas into Jackson’s cell. The pepper spray hit Jackson in his face and groin. After twelve bursts of pepper spray at three different times and after repeated orders to comply, Jackson complied with removal procedures.
After removal, Jackson was taken to the medical department for treatment. The registered nurse on duty washed his head under running water and allowed him to wipe his groin with wet paper towels. Jackson was in three-point restraints during his flushing of the pepper spray. The response team then escorted Jackson to the isolation cell. Jackson was provided clean underwear and left in three-point mechanical restraints.
The district court allowed two of Jackson’s claims to be submitted to the jury. Those two claims were for the amount of pepper spray used by Lieutenant Locklear and for Jackson’s placement in the isolation cell for two days. The district court gave the jury a verdict form containing eleven pages of special interrogatories to assist its determination. The jury returned a verdict for Appellants on Jackson’s claim for the use of pepper spray on January 11, 1994, but the jury found against Appellants for Jackson’s claim of excessive force for his stay in the isolation cell. The jury also found Jackson proved by a preponderance of the evidence, but not by clear and convincing evidence, Appellants acted with malice. The jury then awarded $1 actual damages and punitive damages against specific Appellants totaling $9,500. The district court denied Appellants’ motion for judgment as a matter of law in a post-trial order.
II.
We review de novo a district court’s legal determinations under a Rule 50(b) motion for judgment and determine questions of the sufficiency of the evidence on whether a reasonable jury, based upon the evidence presented, could have reached their verdict. Trimed, Inc. v. Sherwood Medical Co., 977 F.2d 885, 888 (4th Cir.1992). The evidence is viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences. We will not reweigh the evidence or judge credibility. GSM Dealer Servs., Inc. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir.1994).
*100 Appellants argue the district court erred in denying their motion for judgment as a matter of law because Jackson failed to establish the objective and subjective requirements of an excessive force claim. Specifically, Appellants argue that Jackson failed to establish they “acted with a sufficiently culpable state of mind and the deprivation suffered was not sufficiently serious.” We agree.
The Eighth Amendment expressly prohibits the infliction of “cruel and unusual punishments.” U.S. Const, amend. VIII. “It not only out-laws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned.” Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996); see Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively the deprivation of a basic human need was sufficiently serious, and (2) subjectively the prison officials acted with a “sufficiently culpable state of mind.” Wilson, 501 U.S. at 298, 111 S.Ct. 2321; Williams, 77 F.3d at 761.
We are mindful that prison officials should be allowed latitude in taking preventive measures to maintain safety of the officers and medical workers. The Supreme Court has clearly recognized the danger of overstepping the boundaries of judicial review in this area:
“Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.” That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.
Whitley v. Albers, 475 U.S. 312, 321-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).
III.
The objective element of an excessive force claim requires more than a de minimis use of force. The Supreme Court has proscribed recovery based on de minimis force, unless that use of force is “repugnant to the conscience of mankind.” Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted). De minimis injury is evidence of de minimis force. Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir.1994). This Court en banc has recognized a bright-line rule in the Supreme Court’s jurisprudence that de minimis injury defeats a plaintiffs excessive force claim “absent the most extraordinary circumstances,” i.e., unless the force used was “repugnant to the conscience of mankind.” Id. at 1263.
In Norman the district court granted summary judgment against the plaintiff. Although this case presents a different procedural posture, we must also look at the facts in the light most favorable to the plaintiff and make all reasonable inferences in his favor. Given the firmly established law in Norman, we believe no reasonable jury could have found for Jackson.
*101 The district court’s order denying Appellants’ motion for judgment as a matter of law gave several justifications for the decision. The district court relied on testimony about the pain and disability caused by the pepper spray from Jackson. The district court found the medical treatment to relieve the effects of the pepper spray was insufficient given the amount of pepper spray used and the length of his confinement in the isolation room.[1] The district court also found that Jackson’s claim was supported by evidence that the force used by appellants was “repugnant to mankind” and therefore satisfied Jackson’s burden of proof even if his injury was de minimis. However, the court pointed only to the jury’s “statement regarding their feelings about the Defendants’ conduct.”
The jury added to the verdict form two handwritten pages admonishing Appellants and Maryland Department of Corrections for conditions of the isolation room and urging punishment for Appellant Fenton who they thought had struck Jackson without provocation during the transfer of Jackson from his cell to the isolation cell.[2] Most of the jury’s statement was directed at the conditions in the isolation cell. We recognize that this court has condemned cell conditions similar, though admittedly more severe, than those of the isolation cell used in this case. See Kirby v. Blackledge, 530 F.2d 583, 586-87 (4th Cir.1976) (identifying conditions that “taken alone reach the level of cruel and unusual punishment” and describing a strip cell that has “no bedding, no light, and no toilet, save a hole in the floor”). The jury in this case came to the same conclusion about the conditions of the isolation cell, but their comments were gratuitous.
This appeal involves a claim for excessive force and facts, such as the use of pepper spray and placement in an isolation cell in three-point restraints, that are not being reviewed for the first time. Taking the evidence in the light most favorable to Jackson, no reasonable jury could find the force used in this case was “repugnant to the conscience of mankind.” Therefore, the propriety of sending this case to the jury depends on a showing of sufficient evidence for a reasonable jury to find Jackson suffered more than de minimis injury. See Norman v. Taylor, 25 F.3d at 1263.
The jury’s verdict included $1 actual damages which could be construed as a finding of de minimis injury to Jackson. However, the jury instructions, provided upon request of the Court after oral arguments, reveal the jury was instructed: “If *102 you find that the plaintiff is entitled to a verdict in accordance with these instructions, but do not find that the plaintiff has suffered substantial actual damages, then you may return a verdict for the plaintiff in some nominal sum such as one dollar.” (J.I. 30, emphasis added.) The instructions also provided: “You may not, however, compensate a plaintiff who has not suffered any actual pain or injury which is more than de minimis as a result of the unconstitutional conduct.” (J.I. 26, emphasis added.) We recognize the jury’s verdict of $1 actual damages reflects their view that Jackson suffered more than de minimis injury but less than substantial injury. However, in reviewing a district court’s denial of a motion for judgment as a matter of law, we do not defer to the jury’s verdict. Rather, we must review the district court’s decision on the motion.
The district court erred in relying on this court’s decision in Williams to support the denial of Appellants’ motion for judgment as a matter of law. Williams does not control disposition of this case. Several material facts distinguish this case and warrant reversal. First, Williams discussed only the subjective element of the excessive force claim and did not address the objective element because the officers conceded Williams had met his burden on that issue. Second, the chemical spray in Williams was CS tear gas, the type used by military and discontinued prior to 1994 by Maryland Department of Corrections. See Williams, 77 F.3d at 764 (recognizing CS tear gas as potentially lethal). Appellants used OC pepper spray on Jackson. The experts in this case testified to the differences between CS tear gas and OC pepper spray, not the least of which was the timing and appropriateness of using the two different sprays as a use of force. Pepper spray is a milder irritant and is employed to avoid physical confrontation among inmates and guards; whereas CS tear gas was used primarily as a weapon with greater consequences and required more thorough decontamination.
Third, the greater effects and severity of damage caused by CS tear gas than by OC pepper spray directly affects the necessary medical treatment after exposure and pri- or to being placed in isolation. Appellants’ expert in this case testified that the effects of OC pepper spray did not last more than an hour and had no known permanent effects. Williams received no medical treatment following the use of the more potent CS tear gas against him. Jackson’s treatment and decontamination was documented on the videotape and included flushing his face and head with running water and wiping his groin with wet paper towels. Jackson’s decontamination was adequate, and Jackson did not complain to the nurse or the officers.
The notes of the registered nurse who treated Jackson on January 11, 1994, showed Jackson had no complaints that day. In addition, the videotape showed Jackson’s recovery from the effects of the pepper spray. Jackson submitted no medical testimony that the OC pepper spray had any lasting effect or aggravated an existing condition. Jackson’s own testimony revealed his allegations were not supported by any complaints to the medical department. Jackson made no complaints of any kind until January 27, more than two weeks after he was sprayed with pepper spray, and even then none of his complaints referenced the January 11-13, 1994, incident.
Fourth, the type of restraints and effect on the inmate in those restraints was substantially more severe in Williams even though Williams stayed in the restraints only eight hours. The four-point mechanical restraints prevented Williams from eating and required him to urinate on himself. *103 Jackson argues his three-point restraints were too tight and caused him constant pain during the time he was in the isolation cell. Jackson also claims the restraints prevented him from eating and properly urinating in the isolation cell.
The three-point restraints did not totally prevent either activity for Jackson though his movement was restricted. The videotape showed Jackson used his hands to wipe his face and groin area wearing the same restraints in which he was placed in the isolation cell. The record of isolation confinement shows all meals were at least offered to Jackson during confinement in the isolation cell and that Jackson refused breakfast and lunch on January 12, 1994. Jackson’s testimony does not dispute this. Jackson made no complaints of these allegations even though he knew how to make complaints and had done so before, and the record of confinement reveals no complaints or discussion with Jackson while he was in the isolation cell.
Jackson has not shown more than de minimis injury. Taking the evidence in the light most favorable to Jackson and making all reasonable inferences in his favor, we believe no reasonable jury could find excessive force was used. Therefore, the district court should have granted Appellants’ motion for judgment as a matter of law, and we reverse.
IV.
Because this Court reverses the district court’s ruling on Appellants’ motion for judgment, we do not reach the questions presented on the subjective element of an excessive force claim, qualified immunity, and punitive damages.

CONCLUSION

For the reasons stated herein, we reverse Jackson’s jury verdict against Appellants and remand to the district court with direction to enter judgment for the Appellants in accordance with Rule 50(b) of the Federal Rules of Civil Procedure and this opinion. See Mutual Life Ins. Co. of N.Y. v. Asbell, 163 F.2d 121, 123 (4th Cir .1947).

REVERSED AND REMANDED.

. Despite the alleged pain and disability, two minutes after exiting his cell—at 2:05 p.m. on the video tape—Jackson was shouting in Officer Fenton’s face, calling him a devil, and “speaking in tongues.” By 2:10 p.m. on the video tape, Jackson had washed his face and head eight times; the nurse had cleaned his head three times; and he exhibited no effects of the pepper spray. In fact, Jackson limited his decontamination and can be heard on the video tape telling the nurse, “That’s alright.” Jackson was then provided wet paper towels with which to wash his groin, and he cleaned his groin several times.

. This apparent act by Officer Fenton has been described as a blow. A blow is a sudden hard hit, as with a fist; an unexpected shock. The tape does not disclose any blow. During Jackson’s transfer to the medical department, Officer Fenton can be seen making a gesture or swipe in the air when Jackson was turned around toward Officer Fenton and chanting in his face. No contact can be seen on the video tape. If there was any contact at all, then Jackson did not so much as blink. He did not flinch, recoil, react, or cry out. Jackson continued unabated shouting over his shoulder in Officer Fenton's face. Forceful contact, if any, must be assumed from the video tape. In any event, any possible injury to Jackson was de minimis.