**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-6705

DEMETRIUS HILL,

Plaintiff – Appellee,

v.

C.O. CRUM,

Defendant – Appellant,

and

TERRY O'BRIEN, Warden; MR. STRICKLAND, Associate Warden; MR.
WILSON, Captain; LT. STIGER; PULIVAR, Counselor; COUNSELOR
MULLINS; MS. HALL, Case Manager; NURSE MEADE; DR. ALLRED;
DR. ROFF, Health Administrator; C.O. T. TAYLOR; C.O. TAYLOR;
C.O. MARTIN,

Defendants.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.    James C. Turk, Senior
District Judge.  (7:08-cv-00283-JCT-RSB)

Argued:  March 22, 2013              Decided:  August 14, 2013

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.   Judge Agee wrote
the majority opinion, in which Judge Niemeyer joined.   Judge
Thacker wrote a dissenting opinion.

James J. O'Keeffe, IV, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant.    Arlene Sokolowski, SOKOLOWSKI LAW OFFICE, North Royalton, Ohio, for Appellee.

AGEE, Circuit Judge:

Plaintiff Demetrius Hill ("Hill") sued Correctional Officer William Crum ("Crum") pursuant to Bivens v. Six Unnamed Agents, 403 U.S. 388 (1971), alleging that Crum used excessive force against him in violation of Hill's Eighth Amendment rights. Claiming he was entitled to qualified immunity, Crum appeals the district court's denial of his Rule 50(b) motion for judgment as a matter of law. For the reasons that follow, we reverse the district court's order denying Crum's motion for judgment as a matter of law, and remand with instructions to enter judgment in favor of Crum.

## I. Factual Background

At all times relevant to this appeal, Hill was an inmate in the U.S. Penitentiary Lee ("USP Lee") in Jonesville, Virginia. Hill shared a cell with Delmont Logan ("Logan").[1] On November 1, 2007, Logan broke a fire sprinkler in their cell, which caused the cell to flood. Hill and Logan submitted to hand restraints in order to be moved to a new cell so the damage could be repaired. Logan was first escorted by a correctional officer to

---

[1] Crum disputes Hill's version of events. However, because the district court denied Crum's Rule 50(b) motion for judgment as a matter of law, we review the facts in the light most favorable to Hill, the non-movant. Konkel v. Bob Evans Farms, Inc., 165 F.3d. 275, 279 (4th Cir. 1999).

a different cell, which left Crum alone in the flooded cell with Hill.

After Logan was removed, Crum shoved Hill and required him to leave his legal material in the flooded cell. Without provocation, Crum then assaulted Hill, punching him in the abdomen and ribs, and elbowing the side of his head. During the assault, Crum shouted at Hill, "break another sprinkler, I'll break your neck." (J.A. 219). The assault lasted about two minutes before Crum moved Hill to a holding cell, knocking his head against a gate on the way out. The prison staff kept Hill in ambulatory restraints for seventeen hours following the assault.[2] Hill alleged that as a result of Crum's assault, he suffered a bruised rib, temporary dizziness, and a "vicious, vicious headache." (J.A. 150-51, 223).

About an hour after the assault, prison officials recorded two videos of Hill and Logan in their new cell. The videos depict Hill standing in his cell. While he does not seem to be

---

[2] The captain and the warden, not Officer Crum, decide how long an inmate remains in ambulatory restraints. Hill does not contend the ambulatory restraint confinement is part of his cause of action against Crum.

4

in visible distress, he alleged he had a swollen eye, although that is not apparent in any of the videos.[3]

Theresa Meade ("Meade"), a registered nurse, examined Hill after he was moved to the holding cell.  Meade found that Hill had "[n]o injuries," (J.A. 192), and documented her assessment in a contemporaneous report, "Inmate Injury Assessment and Followup," (J.A. 201).  Meade testified that while her examination focused on injuries caused by the ambulatory restraints, it would have included notes regarding Hill's dizziness, feelings of pain, inability to stand or understand had she noticed any problems, or if he had complained of any injuries.  Hill's medical records did not indicate any complaints of injuries resulting from his alleged assault by Crum.

On April 9, 2008, Hill brought a pro se Bivens suit in the United States District Court for the Western District of Virginia against eleven USP Lee prison officials alleging various deprivations of his rights.  Hill's complaint did not name Crum as a defendant or claim any injuries arising out of the November 1, 2007 assault; however, he did complain about the length of time during which he was subjected to ambulatory

---

[3] The video does not show the alleged assault and begins running more than an hour after the assault occurred.  Hill stands for much of the video and does not appear to be in pain.

restraints that day.  On April 18, 2008, Hill, still proceeding pro se, amended his pleading to include a separate excessive force claim against Crum based on the alleged assault in the flooded cell on November 1, 2007.[4]

Initially, the district court sua sponte dismissed Hill's excessive force claim against Crum for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).[5]  In doing so, the court relied on Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc),[6] which held, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."  Id. at 1263.  Finding that Hill did not allege that Crum's assault had caused more than a de minimis injury, the district court dismissed his claim.  Hill, still without counsel, appealed.

While Hill's case was pending on appeal to this Court, the Supreme Court decided Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175 (2010), holding that there is no de minimis injury

---

[4] Although Hill and other plaintiffs brought multiple claims against multiple defendants in the district court, Hill's excessive force claim against Crum is the only claim pertinent to this appeal.

[5] Section 1915A(b)(1) directs a district court to identify and dismiss a civil action filed by a prisoner that is "frivolous, malicious, or fails to state a claim upon which relief may be granted."

[6] Abrogated by Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175 (2010).

6

threshold for an excessive force claim, specifically rejecting the Fourth Circuit's approach in Norman. In light of Wilkins, this Court vacated the district court's dismissal of Hill's excessive force claims and remanded the case to the district court. See Hill v. O'Brien, 387 F. App'x 396 (4th Cir. 2010) (unpublished); (J.A. 86-87).

On remand, Crum filed motions to dismiss and for summary judgment on several grounds, including that he was entitled to qualified immunity. The district court ruled that Crum was not entitled to qualified immunity because a trier of fact could conclude that Hill's Eighth Amendment rights had been violated. Crum answered Hill's complaint, denied liability, and again moved for summary judgment based on qualified immunity, which was again denied based on the same rationale that it "cannot credibly be claimed that Defendants were not on notice that unnecessarily inflicting pain on the Plaintiff violated his constitutional rights." (J.A. 136). Hill obtained counsel and the case proceeded to trial by jury.

At trial, Crum moved pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law at the close of Hill's case and again at the close of all the evidence on the basis of qualified immunity. The district court denied both motions, and the jury returned a verdict in Hill's favor, finding Crum liable and awarding $25,000 in damages. (J.A.

7

207).  After trial, Crum moved for a new trial under Rule 59(a) and again for judgment as a matter of law under Rule 50(b) on the ground of qualified immunity, arguing that his conduct did not violate a clearly established constitutional right under Norman at the time of the alleged assault.

The district court granted Crum's motion for a new trial on all issues, stating that "$25,000 in compensatory damages for a bruised rib and an impermanent headache simply shocks the conscience of the Court.  It is a miscarriage of justice that cannot stand."[7]  (J.A. 227, 233).

---

[7] Hill did not file a cross-appeal of the district court's grant of Crum's motion for a new trial.  As a consequence, we must treat that trial as a nullity.  See United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc., 675 F.3d 394, 405 n.18 (4th Cir. 2012) ("Where a motion for new trial has been sustained, the issues stand as though they had never been tried. The cause is to be tried de novo.  The whole case, including the issues of fact at the former trial, is open for hearing and determination.") (quoting 66 C.J.S. New Trial § 331 (2011) (footnotes omitted).

Despite the fact that the district court set aside the verdict and ordered a new trial, Hill's counsel stated on brief that "[t]he jury found that the injuries were not de minimis," (Br. of Appellee at 18), and "a jury has already determined that Defendant Crum used an amount of force that was repugnant to their conscience," (Br. of Appellee at 18-19).  The jury did not return a special verdict on either point, and we have identified no support in the record for counsel's statements regarding the jury's "findings."  Notwithstanding the dubious veracity of counsel's claims, however, any findings that were made by the jury are now void by the grant of a new trial.

Although granting the new trial motion, the district court denied Crum's motion for judgment as a matter of law on the issue of qualified immunity, again stating that "[i]t is apparent—and cannot be credibly denied—that a reasonable officer in Crum's position in 2007 would have known that repeatedly punching a restrained prisoner in the stomach, ribs, and head for a sustained period, for no other reason but to punish him for a behavioral issue, was unlawful in light of pre-existing law." (J.A. 225). As with its earlier rulings, the district court cited no authority for its decision. Crum timely appealed the denial of his Rule 50(b) motion.[8]

28 U.S.C. § 1291 affords this Court jurisdiction over final orders of the district court. Pursuant to § 1291, the Court has jurisdiction to hear the appeal of the denial of a qualified immunity defense, before there is a final order, if the denial rests on a legal issue. Valladares v. Cordero, 552 F.3d 384, 387-88 (4th Cir. 2009). If, however, the appeal presents an issue of the insufficiency of the evidence to raise a genuine issue of material fact, this Court does not have jurisdiction under § 1291 to consider such a claim. Bailey v. Kennedy, 349 F.3d 731, 738 (4th Cir. 2003); see Johnson v. Jones, 515 U.S.

---

[8] The district court has stayed further proceedings pending this appeal.

9

304, 319-20 (1995) ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pre-trial record sets forth a 'genuine' issue of fact for trial."). We do possess jurisdiction to consider this appeal from the denial of qualified immunity to the extent that Crum claims that his conduct did not violate clearly established law. See Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997) (en banc) ("[W]e have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them."). Because the district court's rejection of Crum's qualified immunity defense turns only on a question of law, it is subject to immediate appeal. Valladares, 552 F.3d at 387-88.


## II. Legal Background

The Supreme Court has extended the application of the Eighth Amendment's prohibition against "cruel and unusual punishments" to the treatment of prisoners by prison officials. In this context, the Court has stated that the Eighth Amendment forbids "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651 (1977)). "When prison officials maliciously and sadistically use force to cause harm,

10

contemporary standards of decency always are violated." <u>Hudson</u>

<u>v. McMillian</u>, 503 U.S. 1, 9 (1992) (quoting <u>Whitley</u>, 475 U.S. at

327). "This is true whether or not significant injury is

evident. Otherwise, the Eighth Amendment would permit any

physical punishment, no matter how diabolic or inhuman,

inflicting less than some arbitrary quantity of injury." <u>Id.</u> at

9.

The <u>Hudson</u> Court further stated

> [t]hat is not to say that every malevolent touch by a
> prison guard gives rise to a federal cause of action.
> The Eighth Amendment's prohibition of cruel and
> unusual punishments necessarily excludes from
> constitutional recognition <u>de minimis</u> uses of physical
> force, provided that the use of force is not of a sort
> repugnant to the conscience of mankind.

<u>Id.</u> at 9-10 (citations and quotation marks omitted).

Referencing this statement in <u>Hudson</u> as its basis, the Fourth

Circuit in <u>Norman</u> focused on the extent of the plaintiff's

injury rather than the nature of the defendant's force as the

threshold a plaintiff must cross to state an Eighth Amendment

claim.[9] The <u>Norman</u> court reasoned that "<u>Hudson</u> does not suggest,

much less hold, that the extent of injury is irrelevant to

whether excessive force has been employed and therefore that an

---

[9] The inmate, Norman, alleged that the defendant swung his keys at him and "caught his right hand, hitting him on his thumb with the cell keys causing his hand to swell[]." <u>Norman</u>, 25 F.3d at 1260-61 (brackets omitted).

11

excessive force claim cannot be defeated by evidence that the plaintiff's injury was de minimis." Norman, 25 F.3d at 1262-63. We held in Norman that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Id. at 1263.

Following the Norman decision, until abrogated by the Supreme Court in Wilkins in 2010, the Fourth Circuit consistently held that a plaintiff could not prevail on an excessive force claim, "absent the most extraordinary circumstances," if he had not suffered more than de minimis injury. "Extraordinary circumstances" were defined as those situations in which the force used is "repugnant to the conscience of mankind," or the pain suffered is so significant that it constitutes more than de minimis injury. Id. at 1263 n.4.

In Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997), we observed the continuing validity of the Norman holding, extending that holding to pre-trial detainees. Riley, a pre-trial detainee, alleged that the defendant used excessive force against him while he was handcuffed and awaiting booking at the police station. 115 F.3d at 1161. Specifically, Riley alleged that the defendant inserted the tip of his pen a quarter of an inch into Riley's nose and threatened to rip his nose open. Id.

12

He further alleged that the defendant slapped him in the face with "medium" force. Id. In determining that the defendant's conduct was not actionable, we applied the holding in Norman that "a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis" to Fourteenth Amendment excessive force claims of pre-trial detainees. Id. at 1166 (quoting Norman, 25 F.3d at 1263). We thus reiterated "[a]n injury need not be severe or permanent to be actionable under the Eighth Amendment, but it must be more than de minimis. We think this same rule applies to excessive force claims brought by pre-trial detainees." Id. at 1167 (citation omitted).

In Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), a pre-trial detainee, Taylor, in "handcuffs and leg irons," id. at 481, alleged that officers shoved a small wooden object into his nose with such force that it caused a nose hemorrhage, shoved the same wooden object into his mouth, which cracked his tooth, hit him in the back of his head, and punched him in the ribs. 155 F.3d at 481. Applying Norman and Riley, we affirmed summary judgment for defendants on the basis that plaintiff suffered only de minimis injury. Id. at 484.

Judge Murnaghan dissented in Taylor, contending that under the Court's holding in Norman, "officers in our circuit are free to use excessive or unjustified force against inmates, so long

13

as they are careful or fortunate enough to leave only minor traces of their blows." 155 F.3d at 487 (Murnaghan, J., dissenting). This was one of the "unacceptable results achieved when a finding of de minimis injury is considered dispositive of the excessive force inquiry." Id. at 486 (Murnaghan, J., dissenting). Despite Judge Murnaghan's objections, Norman and Taylor remained the settled law in the Fourth Circuit.

Consistent with Norman, Riley, and Taylor, we have consistently applied the rule that a plaintiff cannot prevail on an excessive force claim if his injuries were de minimis. See, e.g., Stanley v. Hejirika, 134 F.3d. 629, 634-36 (4th Cir. 1998) (reversing the district court and finding as a matter of law that plaintiff's bruising, swelling, and a loosened tooth were de minimis); Hines v. Young, 142 F. App'x 780, 781 (4th Cir. 2005) (unpublished) (per curiam) (affirming district court's grant of summary judgment for defendants where plaintiff's hairline fracture to his finger required little medical treatment and no pain medication and was thus de minimis); Germain v. Ruzicka, No. 99-6979, 2000 WL 139255, at *3 (4th Cir. Feb. 8, 2000) (unpublished) (per curiam) (summary judgment in favor of defendants was proper where plaintiff's only alleged injury, a severe headache, was clearly de minimis); Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422, at *3 (4th Cir. March 21, 1996) (unpublished) (per curiam) (affirming that

14

plaintiff's "[t]ransitory back and shoulder aches of limited duration" caused by the defendant were <u>de</u> <u>minimis</u>).[10]

The dissent correctly observes that <u>Stanley</u> involved the use of force that was at least arguably justified by a prison security interest. <u>See</u> <u>post</u> at [37] n.3. <u>Stanley</u>, however, like the myriad other cases from this Circuit decided in the <u>Norman</u> line, recognized that the proper inquiry, pre-<u>Wilkins</u>, was "whether the <u>injury</u> of which [the plaintiff] complains is significant enough, when viewed in its factual context, to amount to a violation of his right to be free from cruel and

---

[10] District courts within our circuit have routinely applied the <u>Norman</u> holding to excessive force claims. <u>See e.g.</u>, <u>Martin v. Mathena</u>, No. 7:08-cv-00573, 2009 U.S. Dist. LEXIS 3856, at *5-6 (W.D. Va. Jan. 21, 2009) (dismissing excessive force claim for failure to state more than a <u>de</u> <u>minimis</u> injury in which inmate received a scratch with a small amount of blood as a result of a dog bite); <u>Lewis v. Green</u>, No. RWT-08-2649, 2009 WL 2969584, at *4-5 (D. Md. Sept. 14, 2009) (scratches left by alleged assault by prison guards constituted <u>de</u> <u>minimis</u> injury); <u>Smalls v. S.C. Dep't of Corr.</u>, No. 6:09-2654-TLW-WMC, 2009 WL 5062393, *4 (D. S.C. Dec. 16, 2009) (injuries to eyes from alleged mace use <u>de</u> <u>minimis</u> where plaintiff failed to seek medical attention); <u>Brown v. Spencer</u>, No. 3:07-CV-61, 2008 WL 4763317, at *4 (N.D.W. Va. Oct. 29, 2008) (summary judgment appropriate where plaintiff suffered only <u>de</u> <u>minimis</u> injuries resulting from use of pepper spray); <u>Chatman v. Anderson</u>, No. 7:05 cv 0047, 2005 U.S. Dist. LEXIS 36560, *7-8 (W.D. Va. Aug. 26, 2005) (finding <u>de</u> <u>minimis</u> plaintiff's neck pain and bruising due to alleged choking incident); <u>Garrett v. Bliley</u>, No. 7:05 cv 00497, 2005 U.S. Dist. LEXIS 37610, *7-8 (W.D. Va. Sept. 23, 2005) (finding <u>de</u> <u>minimis</u> plaintiff's "superficial scratch" caused by correctional officer firing live round at another inmate).

15

unusual punishment[.]" _Stanley_, 134 F.3d at 636 (emphasis added).

More to the point, however, the distinction referenced in _Stanley_, and relied upon by the dissent, between excessive force in the context of restoring prison order versus inflicting punishment on a nonviolent inmate, was not recognized under _Norman_ or its following cases in the _de minimis_ injury analysis. For example, _Norman_, _Riley_, and _Wilkins_ involved cooperating prisoners. While there was some allegation in _Taylor_ that the plaintiff was not cooperating with police, there was no suggestion that the plaintiff was involved in any disturbance that justified the assault alleged in that case.

The _Norman_ court specifically _declined_ to base its _de minimis_ injury rule on a prison security distinction because it did "not base [its] conclusion on a separate conclusion that the force used by Sergeant Taylor was in response to the disturbance that Taylor alleges Norman was creating by yelling during the prison role call." _Norman_, 25 F.3d at 1263 n.5. Thus, the fact that Hill alleged that he was not causing a disturbance is not dispositive of the issue of qualified immunity. Moreover, the dissent's distinction for a "restrained and cooperative" inmate cannot be found in the _Norman_ line of cases. In fact, the plaintiff in _Riley_ was "handcuffed," _Riley_, 115 F.3d at 1161,

16

and in "handcuffs and leg irons" in Taylor, 155 F.3d at 481, when the alleged assaults took place.

The threshold requirement that a plaintiff suffer more than a de minimis injury to state an excessive force claim was thus settled law in this circuit until 2010, when the Supreme Court in Wilkins abrogated Norman, Riley, and Taylor. In Wilkins, the prisoner alleged that a corrections officer, Gaddy, "maliciously and sadistically" assaulted him "without any provocation." Wilkins, 130 S. Ct. at 1177. Gaddy allegedly slammed Wilkins onto the floor and "proceeded to punch, kick, knee and choke [Wilkins] until another officer had to physically remove him from [Wilkins]." Id. (citations in original). As a result of Gaddy's force, Wilkins sustained "a bruised heel, lower back pain, increased blood pressure, as well as migraine headaches and dizziness" and "psychological trauma and mental anguish including depression, panic attacks and nightmares of the assault." Id.

Wilkins' complaint was filed in the district court for the Western District of North Carolina, which dismissed the complaint for failure to state a claim pursuant to Norman. "In order to state an excessive force claim under the Eighth Amendment, a plaintiff must establish that he received more than a de minimis injury." Wilkins v. Gaddy No. 3:08CV138-01-MU, 2008 WL 1782372, at *1 (W.D. N.C., Apr. 16, 2008). The district

17

court, which found Wilkins' injuries no more severe than those deemed de minimis in Taylor and Riley, also noted that Wilkins failed to assert that his injuries had required medical attention. Id. We summarily affirmed that conclusion on appeal based on the district court's rationale under Norman and its progeny. See Wilkins v. Gaddy, 308 F. App'x 696 (4th Cir. 2009) (unpublished) (per curiam).

Reversing the holding of this Court and abrogating Norman, Taylor, and Riley, the Supreme Court stated "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79. The Court also concluded that the

> Fourth Circuit's strained reading of Hudson is not defensible. This Court's decision did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from 'significant' to 'non-de minimis'—whatever those ill-defined terms might mean. Instead, the Court aimed to shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'

Id. at 1179 (quoting Hudson, 503 U.S. at 7). The Wilkins Court clarified that the nature of the force, rather than the extent of the injury, is the relevant inquiry. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. " Id. at 1178. Thus, it is clear that

18

the de minimis injury threshold that this Court (and the district courts within this circuit) had relied upon in considering excessive force claims is no longer the appropriate test. The question , however, is whether Crum's alleged conduct which took place prior to the Supreme Court's Wilkins decision, is covered by qualified immunity.

## III. Analysis

### A. Standard of Review

We review the district court's denial of Crum's Rule 50(b) motion de novo. Sloas v. CSX Transp., Inc., 616 F.3d 380, 392 (4th Cir. 2010). We view the facts in the light most favorable to Hill. Id.

### B. Analysis

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects law enforcements officers from liability for "bad guesses in gray areas" and ensures that they will be held liable only for violating bright-line rules. Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011). It "operates to ensure that before they are subjected to

19

suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 731 (2002).

In deciding whether a defendant is entitled to qualified immunity, we examine (1) whether the facts illustrate that Crum violated Hill's constitutional right to be free from excessive force; and, (2) if so, whether Crum's conduct was objectively reasonable in view of the clearly established law at the time of the alleged event. See Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008) (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).[11] Crum does not dispute the first prong, that there is a constitutional right to be free of excessive force. His argument is that he is entitled to qualified immunity because Hill's claimed constitutional violation was not clearly established at the time of the assault. Under the clearly established law of the Fourth Circuit on November 1, 2007, we must agree with Crum.

---

[11] Pearson v. Callahan, 555 U.S. 223 (2009), clarified that we are not required to look first at prong one:

> [w]hile the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

555 U.S. at 236.

20

For a right to be "clearly established," in a qualified immunity case, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 615 (1999). Therefore, in deciding whether the right was clearly established, we must determine whether an official in the defendant's position knew or reasonably should have known that the action he took violated the constitutional rights of the plaintiff. See id. at 614-15. However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. at 615.

"[W]e have long held that it is case law from this Circuit and the Supreme Court that provide notice of whether a right is clearly established." Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012), vacated on other grounds, 133 S. Ct. 9 (2012).

> In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the cases arose. . . . If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.

Id. at 298-99 (quoting Edwards v. City of Goldsboro, 178 F.3d

21

231, 251 (4th Cir. 1999) (internal quotation marks, alterations, and citation omitted).

As the Supreme Court made clear in Wilkins, Norman was an incorrect reading of Hudson. Regardless of how we view Norman in retrospect, however, we evaluate whether the right at issue, for qualified immunity purposes, was clearly established at the time of Crum's conduct on November 1, 2007, three years before the Supreme Court decided Wilkins. See Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013) ("[A] court . . . must determine whether the right at issue was 'clearly established' at the time of the officer's conduct."). At the time of the alleged assault on Hill, Norman and its progeny were controlling in the Fourth Circuit and had been since 1994. Although Wilkins abrogated Norman in 2010, Wilkins can only be applied prospectively in the context of a qualified immunity analysis. See Fields v. Prater, 566 F.3d 381, 390 (4th Cir. 2009) (qualified immunity protects defendants from being "retroactively subject to significant penalties at law for which they did not have proper notice"). In other words, the 2010 holding in Wilkins cannot be imputed retroactively to an officer in this circuit whose allegedly tortious conduct predated the Wilkins decision. The applicable law for qualified immunity purposes would be that in existence in 2007, the time of the alleged assault.

22

In 2007 under Norman, a reasonable correctional officer would have objectively believed that the law in this circuit was what the Fourth Circuit said it was; that is, a plaintiff could not prevail on an excessive force claim "absent the most extraordinary circumstances," if he had suffered only de minimis injury. Norman, 25 F.3d at 1263. Although Wilkins established that the Fourth Circuit had been applying the incorrect standard, the inquiry—for qualified immunity purposes—is not whether the officer correctly interpreted the law as it would be changed in later years, but rather, whether the conduct at issue was reasonable based on the officer's imputed knowledge of the law at the time. Crum's reliance on Norman satisfies this standard.

Crum's alleged conduct was no more egregious than the conduct of other officers in a multitude of cases in which those officers were found not to have used excessive force under the Norman rule, including the Wilkins decision in our court. See, e.g., Riley, 115 F.3d at 1161 (inserting tip of his pen into pre-trial detainee's nose, threatening to rip nose open, and slapping him with "medium" force); Taylor, 155 F.3d at 484 (shoving a small wooden object into pre-trial detainee's nose, cracking his tooth, hitting him in the back of his head, and punching him in the ribs). The similarity of these cases to the case at bar demonstrates that, under the law of our circuit

23

prior to Wilkins, Crum's conduct would have been settled by the Norman analysis.

Our decision in Wilkins provides a representative decision that supports Crum's qualified immunity argument. Over two years after the events at issue here, we affirmed the grant of qualified immunity for failure to establish more than de minimis injury where Wilkins alleged injury from a prison guard beating based on "multiple physical injuries including 'a bruised heel, low back pain, increased blood pressure, as well as migraine headaches and dizziness'" and "psychological injuries such as anxiety, depression, and panic attacks." Wilkins, 2008 WL 1782372 at *1. Viewing Hill's evidence in the light most favorable to him, his claim of injury is no greater (and would objectively appear less) than those found to be no more than de minimis in Wilkins for qualified immunity purposes.

Under Norman, the key inquiry in determining whether a prisoner stated an excessive force claim is whether the plaintiff's injuries were more than de minimis. We may determine whether Hill's injuries were de minimis as a matter of law. See Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (finding that the plaintiff's claimed injury was "so insubstantial that it cannot as a matter of law support her claim").

24

Hill contends on appeal that his injuries were more than <u>de</u> <u>minimis</u> because he "received more injuries than just a sore thumb or a stretched leg." )Br. of Appellee at 18.) However, Hill offered no proof that he suffered any injuries as a result of the assault. Nurse Meade, a registered nurse, who examined Hill after the assault, found that Hill had "[n]o injuries," (J.A. 192) and documented this in a contemporaneous report, "Inmate Injury Assessment and Followup" (J.A. 201). Meade testified that her report would have included notes regarding his dizziness, feelings of pain, inability to stand or understand had she noticed any problems, or if he had complained of any injuries. Hill's medical records do not indicate any complaints of injuries stemming from the assault. And when Hill first filed his <u>pro</u> <u>se</u> lawsuit against eleven prison officials at USP Lee alleging various deprivations of rights, he did not name Crum as a defendant or claim any injuries arising out of the November 1, 2007 assault in his complaint. Hill simply cannot rise above the allegations in his complaint or the evidence tendered to the district court for resolution of the Rule 50(b) motion. While we must construe the evidence in the light most favorable to Hill, we cannot construe that which does not exist. Hill's injuries were clearly <u>de</u> <u>minimis</u>.

Under <u>Norman</u>, however, a plaintiff with only <u>de</u> <u>minimis</u> injuries may still bring an excessive force claim under the

25

Eighth Amendment when certain "extraordinary circumstances" are present. Such "extraordinary circumstances" are either that the force used was "repugnant to the conscience of mankind" or the pain suffered was "such that it can properly be said to constitute more than de minimis injury." Norman, 25 F.3d at 1263 n.4.

The types of actions that have been classified as "repugnant to the conscience of mankind" are torture, humiliation, or degradation. See, e.g., Riley, 115 F.3d at 1168 n.4 (citing Rochin v. California, 342 U.S. 165 (1952) for the proposition that forcibly pumping a suspect's stomach for information after illegally entering his house shocks the conscience); Jordan v. Gardner, 986 F.2d 1521, 1523, 1526 (9th Cir. 1993) (en banc) (prison policy of subjecting female inmates to random, non-emergency pat-downs by male prison guards is cruel and unusual punishment). But see Jackson v. Morgan, 19 F. App'x 97, 101 (4th Cir. 2001) (unpublished) (placing inmate in isolation cell for three days wearing only underwear and in a three-point restraint did not constitute force repugnant to the conscience of mankind).

District courts within our circuit have similarly found only egregious conduct "repugnant to the conscience of mankind." See, e.g., Davis v. Lester, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001) (finding that forcing a prisoner to be "restrained for 48

26

hours with all four of his limbs and his chest immobilized, lying on his back in his own urine in a cold cell" to be repugnant to the conscience of mankind); Peoples v. S.C. Dep't of Corr., No. 8:07-1203-CMC-BHH, 2008 WL 4442583, at *4-10 (D. S.C. Sept. 25, 2008) (plaintiffs allegations that prison officials flooded his cell with unknown "chemical munition," after which he was not allowed to seek medical attention, shower, or clean his cell, rose to the level of alleging conduct repugnant to the conscience of mankind); Acevedo v. Warner, No. 7:03CV00526, 2005 U.S. Dist. LEXIS 32332, *11-12, 15-*16 (W.D. Va. Mar. 29, 2005) (finding that beating a restrained prisoner, making racial slurs to him, and smearing feces and urine on his face was repugnant to the conscience of mankind).

On the other hand, breaking a prisoner's finger by slamming his hand in a mail slot, Hines, 142 F. App'x at 781, and hitting a prisoner with twelve blasts of pepper spray while confined in a cell, Jackson 19 F. App'x at 101, were not "repugnant to the conscience of mankind." Moreover, we have previously found in favor of defendants who assaulted a restrained inmate in circumstances similar to those alleged by Hill. See Germain, 2000 WL 139255, at *2-3 (affirming summary judgment for defendants who sprayed mace at and struck with a baton a prisoner who was restrained, locked in his cell, compliant, and was not involved in the disturbance). We have not classified

27

mere brute force, therefore, as "repugnant to the conscience of mankind." Hill has cited to no case, and we have found none, where the injury pled or proved was "repugnant to the conscience of mankind" in circumstances even remotely close to those of the case at bar.

Crum's alleged conduct, which is undoubtedly reprehensible, nevertheless is more akin to brute force, rather than humiliation, degradation, or torture as we have described "extraordinary circumstances" in other cases. It is, therefore, clear that his conduct does not rise to the level of conduct "repugnant to the conscience of mankind." In no sense do we suggest that Crum's alleged conduct was appropriate for a correctional officer, but it fails to cross the very high threshold for extraordinary circumstances that permit an excessive force claim to advance in the absence of more than de minimis injury for purposes of a pre-Wilkins qualified immunity analysis.

Furthermore, Hill's injuries do not suggest that they were so painful that they constituted "more than de minimis injury," the second of Norman's two extraordinary circumstances. 25 F.3d at 1263 n.4. Nurse Meade found no injuries and documented this in her report, and Hill did not complain of any injuries during this examination. In the videotape taken a few hours after the assault, Hill shows no visible distress and does not appear to

28

have any injuries.  Hill never pled more than de minimis injury and introduced no evidence of any injury, de minimis or otherwise.

Because no extraordinary circumstances are applicable to Hill's injuries, and Hill suffered no more than de minimis injury, he could not, at the time the assault took place, state a claim upon which relief could be granted under the Eighth Amendment.  Therefore, the right he seeks to avail himself of was not clearly established in the Fourth Circuit at the time of the alleged assault.  Consequently, Crum is entitled to qualified immunity.

## IV. Conclusion

For the foregoing reasons, the district court's order denying Crum's Rule 50(b) motion is reversed and the case is remanded to the district court for the entry of judgment in favor of Crum on the basis of qualified immunity.

REVERSED AND REMANDED

THACKER, Circuit Judge, dissenting:

With all due respect to the majority, I must dissent. Under prevailing Supreme Court precedent available at the time of the assault in this case, it was clearly established that an officer could not maliciously or sadistically impose harm on a custodial, handcuffed, and completely non-resistant inmate without violating the inmate's Eighth Amendment right to be free from cruel and unusual punishment -- and any reasonable officer would have known as much.

As the district court correctly concluded, Appellant Crum is not entitled to qualified immunity in as much as "[i]t cannot credibly be claimed that [Appellant Crum] w[as] not on notice that unnecessarily inflicting pain on [Hill] violated [Hill's] constitutional rights." Hill v. O'Brien, No. 7:08-cv-00283, 2011 WL 4566442, at *4 (W.D. Va. Sept. 30, 2011); see also Hill v. O'Brien, No. 7:08-cv-00283, 2012 WL 517544, at *4 (W.D. Va. Feb. 16, 2012) ("It is apparent -- and cannot be credibly denied -- that a reasonable officer in Crum's position in 2007 would have known that repeatedly punching a restrained prisoner in the stomach, ribs, and head for a sustained period, for no other reason but to punish him for a behavioral issue, was unlawful in light of pre-existing law."). Therefore, I would affirm the ruling of the district court.

I.

This case involves the intersection of two judicial doctrines: qualified immunity and the use of excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Whether Appellant Crum is entitled to qualified immunity for his alleged assault on inmate Hill requires a familiar two-pronged inquiry. That inquiry requires a court to determine (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal citations omitted) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)); and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct," id. (quoting Saucier, 533 U.S. at 201) (holding that the sequence of the Saucier inquiry is not mandatory).

A.

Here, Appellant Crum has conceded that the first prong of the qualified immunity analysis -- the alleged violation of a constitutional right -- is satisfied. Appellant's Br. 15 ("[T]he evidence would allow a reasonable jury to conclude that he had violated Hill's constitutional rights."). More specifically, Crum's repeated blows allegedly levied against

31

Hill for "a good solid two minutes," J.A. 142,[1] while Hill was restrained, cooperative, and "attempt[ing] to hunch over [a] desk," id., in an effort to protect himself, even if they may have caused only minor injuries, clearly constituted excessive force in violation of his Eighth Amendment right.

B.

This case then turns on the second prong of the qualified immunity analysis: whether the aforementioned right was clearly established. See Pearson, 555 U.S. at 232. When available, we consider "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose" to discern whether a right was clearly established. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004) (internal quotation marks omitted). To be "clearly established,"

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citations omitted).

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

32

Thus, we must inquire whether on November 1, 2007, a reasonable officer could have believed that repeatedly striking a restrained, cooperative, hunched-over inmate, so long as only de minimis injury resulted, "was lawful[] in light of clearly established law and the information the officer[] possessed." Wilson v. Layne, 526 U.S. 603, 615 (1999). Appellant Crum claims that he was entitled to assault Mr. Hill unabated for over two minutes so long as any resulting injury was de minimis. Indeed, at oral argument, Appellant Crum argued, in essence, that there were no limits to excessive force as long as there were no marks left on the victim, or in other words, "as long as he didn't hurt him, as long as he didn't cause more than de minimis injury." Oral Argument at 2:17, Hill v. Crum, (No. 12-6705), available at http://www.ca4.uscourts.gov/OAaudiotop.htm. Not so. Under controlling Supreme Court precedent at the time -- not to mention applying pure common sense -- no reasonable officer could have believed such abuse was lawful.

1.

Controlling Precedent

On November 1, 2007, the controlling Supreme Court authority for excessive force cases in the Eighth Amendment context was Hudson v. McMillian, 503 U.S. 1 (1992). One need only read the first paragraph of Hudson to realize the right at issue was clearly established:

33

> This case requires us to decide whether the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury. We answer that question in the affirmative.

503 U.S. at 4. The Supreme Court went on to emphasize as follows:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Id. at 9 (emphasis supplied) (citation omitted).

At the time of the incident in this case, Hudson had been controlling Supreme Court precedent for 15 years. In fact, this was the controlling law even before Hudson. The Hudson Court merely extended its prior holding in Whitley v. Albers, 475 U.S. 312 (1986) (regarding the legal standard for an Eighth Amendment excessive force claim arising out of a prison riot), to standard claims by inmates against prison officials for the use of excessive force. Hudson, 503 U.S. at 6-7. Under Whitley and Hudson, "'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 5 (quoting Whitley, 475 U.S. at 319). The Court explained that "the core judicial inquiry" in excessive force cases is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-

34

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7; see also Wilkins v. Gaddy, 559 U.S. 34, 36 (2010) ("In requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson." (emphasis supplied)). Thus, although this circuit misinterpreted Hudson in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), the fact remains that Hudson and Whitley set forth the long standing and clearly established controlling precedent at the time of this incident.

2.

Use of Force

The law was, and is, clear; the proper focus is on the force used, not on the resulting injury. In determining whether force is permissibly applied, the Supreme Court has held that "the extent of injury suffered by an inmate is one factor" of many that should be considered. Hudson, 503 U.S. at 7 (emphasis supplied); see also Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) ("The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis [of an Eighth Amendment excessive force claim]."). Other factors include "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the

35

responsible officials, and [4] any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

Even if we assume Hill's injuries were minor -- which he does not concede -- analysis of the other factors make clear Crum's alleged use of force could be deemed excessive. Although there had been a prior disturbance in Hill's cell that resulted in a broken sprinkler, there was no reason to exercise force to restore order -- order had already been restored. Indeed, the source of the disturbance -- Hill's cellmate -- had been removed from the cell at the time of the incident at issue. Hill remained restrained, compliant, and cooperative when the prison guards arrived on the scene. See J.A. 141-42 ("Officer Crum came over to the cell and requested that we submit to hand restraints. I submitted to hand restraints. He placed handcuffs on us. . . . [Officer Crum] began to tell me I couldn't take my legal work out of the cell which was soaked with water. During that time I put my legal work down, I put the legal work down."). Appellant Crum does not refute Hill's testimony. A lone cooperative inmate, handcuffed and hunched over a desk could not pose a reasonable threat to a prison officer sufficient to justify the use of force. Moreover, Appellant Crum did not temper the severity of the force employed, but, rather, allegedly continued beating Hill for a

36

total of two minutes.  These factors indicate that Crum exercised force, not in a good-faith effort to restore order, but, rather, maliciously and sadistically simply to cause harm.[2]

### 3.

### Norman v. Taylor

Critically, as the district court correctly pointed out, the facts of Hudson -- where a restrained, cooperative inmate in the course of being transported to another cell, was physically beaten by prison officials -- are far more analogous to the present case than the facts of Norman.  Indeed, Norman is distinguishable from this case.

Unlike the present case, the inmate in Norman had himself created a disturbance by yelling to other inmates which disrupted prison security and justified at least some response. Norman, 25 F.3d at 1263 n.5 ("On this understanding of the incident, there can be no question that the district court properly held that the force used was justified in a good faith effort to maintain or restore discipline." (internal quotation marks omitted)).  Here, as the majority notes, it was Hill's

---

[2] According to Hill, Crum threatened him saying "break another sprinkler, I'll break your neck."  J.A. 52.  Hill's testimony further revealed that Crum's use of force may have had another malevolent purpose -- retribution.  Hill testified that in the month leading up to the incident at issue, he filed a grievance with the prison against Officer Crum.  Id. at 145 ("I had Officer Crum written up previously.").

37

cellmate, not Hill, who had broken the sprinkler and created the initial disturbance. Ante at 3-4. And, in any event, the disturbance had been quelled at the time of this incident.[3] As a result, a reasonable officer could not have relied on Norman to justify the sustained beating of a restrained and cooperative inmate.

## II.

Ultimately, whatever erroneous interpretive gloss Norman placed on Hudson, see Wilkins v. Gaddy, 559 U.S. 34 (2010) (abrogating Norman), on November 1, 2007, it would have been readily apparent to a reasonable officer that where a disturbance had already been abated, he could not assault a restrained, compliant, and cooperative inmate for "a good solid two minutes," J.A. 142, punching and elbowing him repeatedly in the abdomen and head, without applying excessive force in violation of the inmate's Eighth Amendment right to be free from

---

[3] It should come as no surprise that this distinction -- that is, the distinction between instances where force is applied to restore order and instances where it is applied without justification -- is of significance. In fact, we recognized this exact distinction and its constitutional consequences in Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998). In Stanley, we found that "bruises, swelling, and a loosened tooth sustained in a fracas that occurred while prison guards were trying to quell a disturbance are constitutionally insignificant and distinct from a loosened tooth and a cracked dental plate sustained in the context of punishment deliberately inflicted by guards because of a verbal argument." Id. at 638.

cruel and unusual punishment.  Accordingly, I would hold Appellant Crum is not entitled to qualified immunity, and affirm the decision of the district court.